LAWRENCE BAKING CO. v. UNEMPLOYMENT COMPENSA-
TION COMMISSION.

1. STATUTES—CONSTRUCTION OF AMENDMENTS.

In construing an amendment to a statute a court should ascer-
tain and give effect to the intention of the legislature and in
doing so a change in phraseology from that of the act as it
stood before amendment raises a presumption that a change
of meaning was also intended.

2. SAME—CONSTRUCTION—OTHER STATES.

The construction of similar provisions of statutes by the courts
of other jurisdictions affords a court guidance in interpreting
a statute.

3. UNEMPLOYMENT COMPENSATION—STOPPAGE OF WORK—DISQUALI-
FICATION FOR BENEFITS.

"Stoppage of work" disqualifying an employee for unemploy-
ment compensation benefits relates to cessation of work in
plant operation of the employer and not to the employee as an
individual (Act No. 1, § 29, subd. [c], Pub. Acts 1936 [Ex.
Sess.], as amended by Act No. 364, Pub. Acts 1941).

4. STATUTES—CONSTRUCTION—AMENDMENT—PREVIOUS JUDICIAL AND
ADMINISTRATIVE INTERPRETATIONS.

In construing an amendatory statute it must be assumed that
the legislature used the language therein contained in the
light of prior judicial and administrative interpretation.

5. UNEMPLOYMENT COMPENSATION—PAYMENT OF BENEFITS—LABOR
CONTROVERSY.

The payment of unemployment compensation benefits is not de-
pendent upon the merits of a labor controversy which may be
causing the unemployment (Act No. 1, § 29, subd. [c], Pub.
Acts 1936 [Ex. Sess.], as amended by Act No. 364, Pub.
Acts 1941).

6. SAME—STRIKES—INFERENCE AS TO UNEMPLOYMENT.

It is not to be inferred that in all instances an employee on strike is unemployed necessarily because of his own fault (Act No. 1, § 29, subd. [c], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 364, Pub. Acts 1941).

7. SAME—CONSTRUCTION OF AMENDATORY ACT—PAYMENT OF BENEFITS—PURPOSE OF ACT.

Even though amendment of unemployment compensation act, providing that the payment of benefits to an employee is not dependent upon the merits of a labor controversy which might be causing the unemployment for which the benefits are sought, be contrary to the policy declared in the original act of providing for the systematic accumulation of funds during periods of employment to be used for the benefit of persons unemployed through no fault of their own, it was within the power of the legislature to adopt such provision and being amendatory, it dominates and modifies the former law (Act No. 1, §§ 2, 29, subd. [c], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 364, Pub. Acts 1941).

8. STATUTES—EXPRESSION OF INTENT—GENERAL—PARTICULAR.

Where a statute expresses first a general intent, and afterwards an inconsistent particular intent relating to the same subject matter, the latter will be taken as an exception from the former and both will stand.

9. UNEMPLOYMENT COMPENSATION—STRIKE BY PART OF EMPLOYEES—INTERRUPTION OF EMPLOYER'S OPERATIONS—DISQUALIFICATION FOR BENEFITS.

Under amendment of section of the unemployment compensation act pertaining to disqualification of employee for payment of benefits, where 16 of plaintiff's 98 employees stopped work and went on strike upon failure of negotiations between their union and plaintiff company, its operations were interrupted for a period of only about 15 minutes and the strikers were replaced by new employees because of their participation in the strike, the striking employees were not disqualified from receiving benefits under the act since there was no substantial curtailment of the work and operations of the employer because of the labor dispute (Act No. 1, § 29, subd. [c], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 364, Pub. Acts 1941).

10. SAME—CONSTRUCTION OF STATUTES—STOPPAGE OF WORK—STRIKES.

The term "stoppage of work" and the word "strike" are not synonymous when used in determining matter of disqualification of employees for unemployment compensation benefits (Act No. 1, § 29, subd. [c], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 364, Pub. Acts 1941).

11. SAME—CONSTRUCTION OF STATUTES—DISQUALIFICATION FOR BENEFITS—DUE PROCESS—EQUAL PROTECTION.

Amendment of unemployment compensation act providing that an employee shall not be disqualified to receive benefits if his employment is due to the stoppage of work existing because of a labor dispute in the employer's establishment, reasonably construed as disqualifying employee only when there is a stoppage of work of the employer, does not deny the employer due process and equal protection of law since all employers who are similarly affected because of a labor dispute are treated alike (U. S. Const. am. 14; Mich. Const. 1908, art. 2, § 16; Act No. 1, § 29, subd. [c], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 364, Pub. Acts 1941).

12. SAME—DISQUALIFICATION FOR BENEFITS—LEGISLATIVE STANDARD.

Since there must necessarily be some line or point of difference between granting and withholding benefits during the stoppage of work caused by a labor dispute and there is no mathematical or logical way of fixing it precisely, the legislative standard must be accepted unless it is unreasonable (Act No. 1, § 29, subd. [c], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 364, Pub. Acts 1941).

13. SAME—CONTRIBUTIONS BY EMPLOYER—PAYMENTS TO EMPLOYEE—CONSTITUTIONAL LAW—INTERVENTION BY STATE.

The fact that an employer's contribution to the unemployment compensation fund is determined upon a variable tax rate based upon the employer's experience record but payment of unemployment benefits may be made to striking employees where strike does not result in a stoppage of work of the employer without first having had a judicial determination of the merits of the labor controversy does not render provision relative to disqualification of employee for payment of benefits unconstitutional by constituting an intervention by the State in behalf of the employees in the labor dispute, since neither the contributions to the fund nor the payments therefrom are conditioned upon the merits of the labor dispute

causing unemployment (Act No. 1, §§ 19, 29, subd. [c], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 364, Pub. Acts 1941).

14. SAME—ADMINISTRATION OF FUND.

All interested parties involved in a claim for unemployment compensation must be dealt with on an impartial basis and the unemployment compensation fund never be used to finance claimants who are directly involved in a labor dispute nor denied claimants legally entitled to benefits to enable an employer to break a strike (Act No. 1, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 364, Pub. Acts 1941).

15. SAME—EMPLOYER'S CONTRIBUTIONS—DISQUALIFICATION OF EMPLOYEE FOR BENEFITS—MERITS OF LABOR DISPUTE—PENALTIES.

Since the determination as to an employer's contribution to the unemployment compensation fund is based upon its experience record and rate would be increased because of payments to employees out on strike irrespective of the merits of labor dispute causing unemployment, and payment of unemployment benefits is required unless there be a stoppage of work in the establishment due to the existence of a labor dispute therein, irrespective of the merits of the labor dispute, increase of rate of contributions from such cause would not be unconstitutional as resulting in penalty upon employer who did not suffer a stoppage of work (Act No. 1, §§ 19, 29, subd. [c], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 364, Pub. Acts 1941).

16. CONSTITUTIONAL LAW—STATUTES—PRESUMPTIONS.

A statute will be presumed to be constitutional by the courts unless the contrary clearly appears and in case of doubt every possible presumption not clearly inconsistent with the language and the subject matter is to be made in favor of the constitutionality of legislation.

17. SAME—STATUTES—PRESUMPTIONS—INTENT.

Every reasonable presumption must be indulged in favor of the validity of an act and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity.

18. SAME—STATUTES—PRESUMPTIONS.

A statute will be presumed constitutional where it may be construed in either of two ways, one of which is consistent with constitutionality.

19. SAME—CLASSIFICATION—STATUTES PRESUMED REASONABLE.

A legislature is not bound to tax every member of a class or none but may make distinctions of degree having a rational basis and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it.

20. SAME—WISDOM OF STATUTES—COURTS—LEGISLATURE.

It is not within the province of a court to consider or to determine the wisdom or policy of legislative enactments.

21. COSTS—PUBLIC QUESTION—CONSTRUCTION OF STATUTES—UNEMPLOYMENT COMPENSATION.

No costs are allowed on appeal from judgment affirming an award of unemployment compensation benefits by the appeal board of the State unemployment compensation commission, where construction of amendatory legislation is considered, a public question being involved (Act No. 1, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 364, Pub. Acts 1941).

WIEST, BUTZEL, and BOYLES, JJ., dissenting.

Appeal from Ingham; Carr (Leland W.), J. Submitted June 18, 1943. (Docket No. 7, Calendar No. 42,326.) Decided February 24, 1944. Rehearing denied April 7, 1944. Certiorari denied by Supreme Court of the United States October 9, 1944.

Certiorari by Lawrence Baking Company, a Michigan corporation, to review an order of the appeal board of the Unemployment Compensation Commission awarding benefits to former employees of plaintiff. Judgment for defendant. Plaintiff appeals. Affirmed.

*Cummins & Cummins,* for plaintiff.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Florence N. Clement* and *Daniel J. O'Hara,* Assistants Attorney General, for defendant.

STARR, J. Plaintiff appeals from a circuit court judgment affirming an award of unemployment com-

pensation benefits by the appeal board of defendant commission.

The facts are stipulated. Plaintiff, a Michigan corporation, is engaged in the wholesale baking business in the city of Lansing. Prior to July 1, 1941, the United Bakery & Confectioners Workers, affiliated with the United Retail & Wholesale Workers of America, C. I. O., attempted to organize the employees of plaintiff company into a union. The union representatives and plaintiff's officials conferred on several occasions regarding a collective bargaining agreement as to hours of work, wages, seniority, and other conditions of employment. Such negotiations failed, and on July 1, 1941, 16 union members of plaintiff's 98 employees stopped work and went on strike. Such strike interrupted plaintiff's baking operations for a period of only about 15 minutes. It immediately hired new employees, and after July 1st there was no further interruption or stoppage of its work and operations. On July 2d it notified each of the 16 striking employees, by letter, that "due to your participation in the strike it has been necessary to replace you with a new employee." The union established a picket line at plaintiff's plant and continued such picketing until about September 16th.

Eleven of the 16 striking employees filed claims with defendant commission for unemployment compensation benefits for the period from July 8 to July 22, 1941. The commission issued its determination allowing such claims, and plaintiff appealed to the referee, who affirmed the allowance. The appeal board of the commission affirmed the referee's decision, and, upon review by certiorari, the circuit court entered judgment affirming the appeal board. Plaintiff appeals from such judgment.

This case, involving the question of the qualification of the claimants to receive unemployment bene-

fits, requires an interpretation of Act No. 1, § 29, subd. (c), Pub. Acts 1936 (Ex. Sess.), as amended by Act No. 364, Pub. Acts 1941, effective July 1, 1941 (Comp. Laws Supp. 1942, § 8485–69, Stat. Ann. 1941 Cum. Supp. § 17.531) (further amendments of said section 29 by Act No. 18, Pub. Acts 1942 [2d Ex. Sess.], and by Act No. 246, Pub. Acts 1943, are not involved in the present case). Prior to the 1941 amendment, said section 29 (c) of the 1936 act, as then last amended by Act No. 324, Pub. Acts 1939, and designated therein as section 29 (d), provided in part:

"An individual shall be disqualified for benefits * * *

"(d) For any week with respect to which his total or partial unemployment is due to a labor dispute which is actively in progress in the establishment in which he is or was last employed."

The 1941 act amended said section 29 to read in part as follows:

"An individual shall be disqualified for benefits * * *

"(c) For any week with respect to which his total or partial unemployment is due to a *stoppage of work* existing because of a labor dispute in the establishment in which he is or was last employed."

To summarize, section 29 (c) of the 1936 act disqualified an employee for benefits if his unemployment was "*due to a labor dispute* * * * actively in progress *in the establishment.*" The 1941 amendment of said section disqualifies an employee for benefits if his unemployment is "*due to a stoppage of work* existing because of a labor dispute *in the establishment.*" Plaintiff contends that the phrase of the amendment, "stoppage of work," means the

work or employment of the individual employee.
Under such contention plaintiff argues that by stopping their work and going on strike, the claimants
disqualified themselves for benefits. Defendant contends, as held by the circuit court, that such phrase
means the stoppage of the operations or work of
the employer establishment.

The constitutionality of State social security acts,
which include provisions for unemployment compensation, were upheld, in general, in *Carmichael* v.
*Southern Coal & Coke Co.*, 301 U. S. 495 (57 Sup.
Ct. 868, 81 L. Ed. 1245, 109 A. L. R. 1327), and
*Helvering* v. *Davis,* 301 U. S. 619 (57 Sup. Ct. 904,
81 L. Ed. 1307, 109 A. L. R. 1319).

In construing the 1941 amendment of section 29
(c), we should ascertain and give effect to the intention of the legislature. *In re Chamberlain's
Estate,* 298 Mich. 278; *City of Grand Rapids* v.
*Crocker,* 219 Mich. 178. It may be presumed that by
the 1941 amendment the legislature intended to
change the meaning of the existing law. In 59 C. J.
p. 1097, § 647, it is stated:

"It will be presumed that the legislature, in
adopting the amendment, intended to make some
change in the existing law, and therefore the courts
will endeavor to give some effect to the amendment.
So a change of phraseology from that of the original
act will raise the presumption that a change of
meaning was also intended."

In said 1941 amendment of section 29 (c), the
legislature adopted the identical provision used in
the unemployment statutes of many other States to
impose disqualification for unemployment benefits.
See Social Security Yearbook 1940, p. 64 *et seq.* In
the English National Insurance Act of 1911 (Statutes 1–2, Geo. V, chap. 55, § 87, as amended), the

same provision is used to impose benefit disqualification. The construction placed upon similar statutory provisions by the courts of other States affords us guidance in interpreting such amendment. *In re Cox's Estate*, 284 Mich. 628 (117 A. L. R. 1224); *Stellwagen* v. *Wayne Probate Judge*, 130 Mich. 166.

A provision of the Nebraska unemployment insurance law (Nebraska Comp. Stats. Supp. 1939, § 48–705 [d]) was considered and construed in *Magner* v. *Kinney*, 141 Neb. 122 (2 N. W. [2d] 689). In holding that the phrase "stoppage of work" meant the work or operations of the employer establishment and not the work of the individual claimant as an employee, the court said in part, p. 128:

"The next question for our consideration is the challenge to the interpretation given by the district court to the words of the statute, section 48–705: 'An individual shall be disqualified for benefits * * * (d) For any week with respect to which the commissioner finds that his total unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed.' * * * The district court construed this language to mean 'that the term "stoppage of work," which appears in subsection (d) of section 48–705, Comp. St. Supp. 1939, refers to an existing condition at the former place of employment on the date of the claims and not to the original cause of any claimant's unemployment.' In other words, the technical meaning of the term, 'stoppage of work,' as used in our disqualification clause, is a substantial curtailment of work in an establishment, not the cessation of work by the claimant or claimants.

"The language of our unemployment compensation law quoted above was a substantial reenactment of the English national insurance act of 1911. See Statutes 1–2, Geo. V, chap. 55, § 87, which was

amended in 1924 by section 4 (1), chap. 30, Statutes 14–15, Geo. V. This language, it appears, had received a settled construction by the English authorities charged with the administration of this English act long prior to the adoption of it by ourselves."

See, also, *In re Steelman,* 219 N. C. 306 (13 S. E. [2d] 544).

In the present case, in holding that the claimants were not disqualified from receiving benefits, the circuit court said in part:

"Under the present form of the statute, the disqualification to receive benefits is not imposed on the employee unless a stoppage of work results from the labor dispute. On behalf of plaintiff it is contended that the language used in the amended act should be construed as having reference to the status of the employee. However, such interpretation would make the phrase 'stoppage of work' practically synonymous with 'unemployment' as used in the same sentence. Furthermore such interpretation would, as a practical proposition, leave the amendment without significance. The decisions dealing with this matter, both in England and in this country, uniformly support the construction accepted by the appeal board. It must be assumed that the legislature made the amendment of 1941, using the language quoted, in the light of prior judicial and administrative interpretation."

We cannot agree with plaintiff's argument that the circuit court's construction of section 29 (c), as amended, is in conflict with the declaration of public policy stated in section 2 of the 1936 act.* Said section provides in part:

"Declaration of policy. The legislature acting in the exercise of the police power of the State de-

---

* Comp. Laws Supp. 1940, § 8485–42, Stat. Ann. 1942 Cum. Supp. § 17.502.—REPORTER.

clares that the public policy of the State is as follows: * * * The systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment by the setting aside of unemployment reserves to be used for the benefit of persons *unemployed through no fault of their own,* thus maintaining purchasing power and limiting the serious social consequences of relief assistance, is for the public good, and the general welfare of the people of this State.''

Plaintiff's argument is based upon tne assumptions that the claimants were wrongfully on strike; were not justified in striking; that the strike was their own fault; and that they were unemployed because of their own fault. As stated in said section 2, the basic purpose of the unemployment compensation law is to afford protection against the hazard of unemployment. The payment of unemployment benefits is not dependent upon the merits of a labor controversy, and we cannot establish a rule that in all instances an employee on strike is unemployed necessarily because of his own fault. The amendment of section 29 (c) is not, we believe, in conflict with the policy of the act. Furthermore, the legislature had the power to adopt the amendment and, if a conflict with said section 2 resulted, the amendment must control. As said in *People* v. *Johnson,* 270 Mich. 622, 624, ''amendments dominate and modify the former law, in case of conflict.'' In the case of *In re Steelman, supra,* in which a similar statutory enactment was involved, the court said, pp. 310, 311:

''The appealing employee-claimants take the position that the interpretation of this section is perforce controlled by the declaration of policy contained in section 2 of the act, the general designation of workers there selected for benefits being

those who are 'unemployed through no fault of their own.' The commission and the court below thought otherwise. They followed the usual and accepted rule of construction that 'where a statute expresses first a general intent, and afterwards an inconsistent particular intent, the latter will be taken as an exception from the former and both will stand.' 1 Lewis' Sutherland on Statutory Construction (2d Ed.), § 268; *Rodgers* v. *United States,* 185 U. S. 83 (22 Sup. Ct. 582, 46 L. Ed. 816).   \*   \*   \*

"Indeed, it may be doubted whether any serious conflict exists in the present law between the general intent expressed in the declaration of policy and the particular intent found in section 5 (d) of the act. *School Commissioners, City of Charlotte,* v. *Board of Aldermen,* 158 N. C. 191 (73 S. E. 905). It is a recognized principle of statutory construction, that when words of general import, the subject of a statute, are followed by words of particular or restricted import relating to the same subject matter, the latter will operate to limit or to restrict the former. *Nance* v. *Railway,* 149 N. C. 366 (63 S. E. 116); *Orinoco Supply Co.* v. *Masonic Eastern Star Home,* 163 N. C. 513 (79 S. E. 964). The end of all construction is to discover and to effectuate the legislative intent. *Abernethy* v. *Board of Commissioners of Pitt County,* 169 N. C. 631 (86 S. E. 577)."

We are convinced that by the 1941 amendment of section 29 (c) the legislature intended to disqualify an employee for benefits only when his unemployment resulted from a stoppage or substantial curtailment of the work and operations of the employer establishment because of a labor dispute. The phrase "stoppage of work" refers to the work and operations of the employer establishment and not to the work of the individual employee.

Plaintiff relies upon the case of *Board of Review* v. *Mid-Continent Petroleum Corp.,* 193 Okla. 36 (141 Pac. [2d] 69), in which the holding was contrary to

that in *Magner* v. *Kinney, supra.* In considering a provision of the Oklahoma unemployment compensation law similar to the 1941 amendment of section 29 (c), the court said:

"Had the legislature intended to refer to the shutdown of the plant and not to the cessation of work by the employee, the term 'stoppage of operation' would have been far more appropriate. It seems to us that the word 'work' ordinarily refers to or comprehends the activities of the workman, not the operation of a factory. That portion of the act * * * which disqualifies a workman for benefits 'for any week in which * * * his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory' refers, with respect to the workman, to his unemployment and to his stoppage of work. A strike in the labor sense is generally defined as a stoppage of work by common agreement of workingmen. 15 C. J. S. p. 1008, § 11. That was the definition evidently in the mind of the legislature; the term 'stoppage of work' was considered as synonymous with 'strike.' "

We call attention to the dissenting opinion in the above Oklahoma case which states, in substance, that benefits should be paid to the employees if there was no stoppage of the employer's work or production. Such dissent states in part:

"In 1941, the legislature again decided to change its policy. It provided disqualification for benefits 'for any week with respect to which the commission finds that his unemployment is due to a stoppage of work which exists at the factory, establishment or other premises at which he is or was last employed, because of a labor dispute.' The parties herein virtually admit that a striking employee could recover under that act if the employee were not otherwise disqualified and there was no stoppage of production."

The majority opinion of the Oklahoma court is based upon its interpretation of the phrase "stoppage of work" as being synonymous with the word "strike." We cannot agree with such interpretation which is contrary to the clear meaning and import of the words used. Plaintiff also cites *Miners in General Group* v. *Hix,* 123 W. Va. 637 (17 S. E. [2d] 810), which involved a statute similar to the 1941 amendment of section 29 (c). However, the factual situation presented in that case distinguishes it from the case at hand. Furthermore, such case did not involve the question as to whether or not claimant employees should be disqualified for, benefits where there was no stoppage of the employer's work or production. The case of *Bodinson Manfg. Co.* v. *California Employment Comm.* (Cal. Dist. Ct. of App.), 101 Pac. [2d] 165 (affirmed, 17 Cal. [2d] 321 [109 Pac. (2d) 935]), cited by plaintiff and also cited in the *Mid-Continent Petroleum Corporation Case, supra,* involved an entirely dissimilar statute which did not contain the phrase "stoppage of work." Our decision in *Chrysler Corp.* v. *Smith,* 297 Mich. 438 (135 A. L. R. 900), did not involve the interpretation of the 1941 amendment of section 29 (c).

Plaintiff further contends that the circuit court's construction of the 1941 amendment, which construction we have hereinbefore affirmed, renders said amendment unconstitutional as denying plaintiff employer due process and equal protection of law.* Under such contention plaintiff argues that the circuit court's construction results in arbitrary discrimination between employers by classifying them on the basis of (1) those who elect to stop work and close down and (2) those who do not elect to stop work or close down during a strike. The

* See U. S. Const. am. 14; Mich. Const. 1908, art. 2, § 16.—RE-PORTER.

amendment, as construed, does not so classify employers. All employers who are similarly affected "because of a labor dispute" are treated alike. Under the amendment, as construed, employees are disqualified if the labor dispute results in a stoppage of the employer's work, and they are not disqualified if the labor dispute does not result in such stoppage. This is a reasonable means of determining qualification for benefits and does not result in arbitrary or unjust discrimination between employers. In the case of *In re Steelman, supra,* the court said, p. 310:

"It thus appears that the State seeks to be neutral in the labor dispute as far as practicable, and to grant benefits only in conformity to such neutrality. Of course, it is recognized that in a matter of this kind, some allowance must be made in fixing the line or point of difference between granting and withholding benefits during the stoppage of work caused by a labor dispute. *Atlas Supply Co.* v. *Maxwell,* 212 N. C. 624 (194 S. E. 117). 'But when it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the legislature must be accepted unless we can say that it is very wide of any reasonable mark'—Mr. Justice Holmes in *Louisville Gas & Electric Co.* v. *Coleman,* 277 U. S. 32 (48 Sup. Ct. 423, 426, 72 L. Ed. 770). The wisdom or impolicy of such decision belongs to the legislative, and not to the judicial, department of the government. *United States* v. *Darby,* 312 U. S. 100 (61 Sup. Ct. 451, 85 L. Ed. 609, 132 A. L. R. 1430)."

We are satisfied that the 1941 amendment of section 29 (c), as construed by the circuit court, does not result in an arbitrary or unjust classification of, or in discrimination between, employers involved in a labor dispute.

Under its contention of unconstitutionality, plaintiff further argues that, because the employer's contribution to the unemployment compensation fund is determined upon a variable tax rate based upon the employer's experience record (Act No. 1, § 19, Pub. Acts 1936 [Ex. Sess.], as last amended by Act No. 364, Pub. Acts 1941 [Comp. Laws Supp. 1942, § 8485–59, Stat. Ann. 1942 Cum. Supp. § 17.520]), the payment of unemployment benefits to employees on strike, without a judicial determination of the merits of the labor controversy, constitutes an arbitrary intervention by the State in aid of one party to the controversy. In other words, plaintiff claims that the 1941 amendment of section 29 (c), as construed, is unconstitutional because it does not base disqualification for benefits upon a determination of the merits of the labor dispute resulting in unemployment, and because it imposes a penalty against the employer, which constitutes an intervention by the State in behalf of the employees in the labor dispute. In *Chrysler Corp.* v. *Smith, supra,* Mr. Justice Wiest approved the following statement by the appeal board, pp. 446, 447:

"All interested parties who are involved in a claim for unemployment compensation * * * must be dealt with on an impartial basis. The unemployment compensation fund should never be used to finance claimants who are directly involved in a labor dispute, nor should it ever be denied to claimants who are legally entitled to receive benefits. * * * None of the money accumulated in this fund should ever be disbursed for the purpose of financing a labor dispute nor should it be illegally withheld for the purpose of enabling an employer to break a strike. The State of Michigan, in so far as this act is concerned, must remain neutral in all industrial controversies."

Plaintiff's argument is based upon the premise that the payment of compensation to employees on strike is a penalty upon the employer, because its rate of contribution to the unemployment fund will thereby be increased. The public purpose of the unemployment compensation law is to alleviate the distress of unemployment, and the payment of benefits is not conditioned upon the merits of the labor dispute causing unemployment. Likewise, the required contribution of the employer to the unemployment compensation fund is not determined upon the basis of the merits of the dispute. The increase in the amount of the employer's contribution to the fund because of its experience record of payments to employees is not in any sense a penalty. By the unemployment compensation act, the legislature provided a method of determining the employer's contribution to the compensation fund, and it did not see fit to base the amount of such contribution upon the merits of a labor dispute or upon the right or wrongdoing of the employer in connection with such dispute. Such legislative enactment is presumed to be constitutional unless the contrary clearly appears. In the case of *Cady* v. *City of Detroit,* 289 Mich. 499, 505, we said:

"A statute will be presumed to be constitutional by the courts unless the contrary clearly appears; and in case of doubt every possible presumption not clearly inconsistent with the language and the subject matter is to be made in favor of the constitutionality of legislation. * * * Every reasonable presumption or intendment must be indulged in favor of the validity of an act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity."

In *Sullivan* v. *Michigan State Board of Dentistry,*
268 Mich. 427, Mr. Justice BUTZEL stated as follows:

"Even if the law could be construed in two ways,
one consistent with the constitutionality, and the
other inconsistent therewith, the former will be con-
sidered as the one presumptively intended by the
legislature. *Motz* v. *City of Detroit,* 18 Mich. 495;
*Grand Rapids Booming Co.* v. *Jarvis,* 30 Mich. 308;
*Attorney General* v. *Railway,* 210 Mich. 227."

"A legislature is not bound to tax every member
of a class or none. It may make distinctions of de-
gree having a rational basis, and when subjected
to judicial scrutiny they must be presumed to rest
on that basis if there is any conceivable state of
facts which would support it." *Carmichael* v.
*Southern Coal & Coke Co., supra,* p. 509.

We agree with the circuit court who, in affirming
the decision of the appeal board, said in part:

"The legislature has seen fit to make the actual
stoppage of work in the establishment concerned
the controlling feature in determining whether the
employee is disqualified from demanding and re-
ceiving unemployment compensation."

We conclude that in the present case the payment
of unemployment benefits to claimant employees
would not result in a penalty against plaintiff and
would not constitute an intervention by the State
on behalf of the employees in the pending labor dis-
pute. The payment of such benefits is not depend-
ent upon a determination of the merits of the dis-
pute. The 1941 amendment of section 29 (c), as
construed, does not deny plaintiff due process or
equal protection of law, and we hold such amend-
ment to be constitutional.

Much of plaintiff's briefs is devoted to arguing
the wisdom of the 1941 amendment. As it is not

within our province to consider or to determine the wisdom or policy of legislative enactments, such arguments might better have been addressed to the legislature.

The judgment of the circuit court is affirmed. Public questions being involved, no costs are allowed.

NORTH, C. J., and BUSHNELL, and SHARPE, JJ., concurred with STARR, J.

BOYLES, J. (*dissenting*). Under section 29 of the unemployment compensation act,* as amended by Act No. 364, Pub. Acts 1941 (Comp. Laws Supp. 1942, § 8485-69, Stat. Ann. 1941 Cum. Supp. § 17.531), the law is stated to be as follows:

"An individual shall be disqualified for benefits:
*  *  *

"(c) For any week with respect to which his total or partial unemployment is due to a stoppage of work existing because of a labor dispute in the establishment in which he is or was last employed: *Provided, however,* That no individual shall be disqualified under this section if he shall establish that he is not directly involved in such dispute. For the purpose of this section, no individuals shall be deemed to be directly involved in a labor dispute, unless it is established:

"(1) That, at the time or in the course of a labor dispute in the establishment in which he was then employed, he shall in concert with one or more other employees have voluntarily stopped working other than at the direction of his employer, or   *   *   *."

I think it is plain, from the context of (c) above, that it was the legislative intent to refer to "a labor dispute in the establishment," and not to "stoppage of work" in the establishment. The language

---

* Act No. 1, Pub. Acts 1936 (Ex. Sess.).—REPORTER.

is plain. It says "his * * * unemployment is due to a stoppage of work existing because of a labor dispute in the establishment."

An individual is disqualified from receiving unemployment compensation benefits for any week with respect to which his unemployment is due to a stoppage of work because of a labor dispute, unless he proves that he is not directly involved in such labor dispute; and he is not deemed to be directly involved in the labor dispute *unless it is established* that at the time of the labor dispute he *voluntarily stopped working,* in concert with one or more other employees. The corollary of this statement is that if an employee, in concert with one or more others, voluntarily stops working at the time of a labor dispute, he is deemed to be directly involved in the labor dispute and disqualified from receiving compensation for any week with respect to which his unemployment was due to such stoppage of work (unless he otherwise establishes that he was not directly involved in such dispute).

In the instant case it is conceded that these claimants voluntarily quit work, in concert, at the time of the labor dispute. They must establish the fact that they were not directly involved in the dispute. That they were directly involved is conceded. I think it was the legislative intent that they be disqualified from receiving unemployment compensation during the time their unemployment was due to their voluntary stoppage of work. Any other construction of the act would result in compelling an employer indirectly to pay an employee after he voluntarily quit work, through the indirect method of compelling the employer to contribute to the unemployment compensation fund out of which the employee received compensation. Such was not the legislative intent, and for that reason the award

should be set aside, but without costs, a public question being involved.

Wiest, J. (*dissenting*). I do not join in the opinion of Mr. Justice Starr. The gist of his opinion appears in his approval of the following quotation from the decision of the circuit judge:

" 'The legislature has seen fit to make the actual stoppage of work in the establishment concerned the controlling feature in determining whether the employee is disqualified from demanding and receiving unemployment compensation.' "

The term "stoppage of work," read in connection with disqualifications of an employee for compensation, relates to him as an individual and not to cessation of work in the factory.

The statute, Act No. 1, § 29, subd. (c) (1), Pub. Acts 1936 (Ex. Sess.), as amended by Act No. 364, Pub. Acts 1941 (Comp. Laws Supp. 1942, § 8485–69, Stat. Ann. 1941 Cum. Supp. § 17.531), bars unemployment compensation to an employee "that, at the time or in the course of a labor dispute in the establishment in which he was then employed, he shall in concert with one or more other employees have voluntarily stopped working other than at the direction of his employer."

If the unemployment was by reason of voluntary cessation of work by the employee on account of his joinder in a strike there can be no compensation awarded, whether there is stoppage or continuance of plant operation.

In *Board of Review* v. *Mid-Continent Petroleum Corp.*, 193 Okla. 36 (141 Pac. [2d] 69), decided in May, 1943, by the Oklahoma Supreme Court, the claimant urged that he was entitled to compensation unless stoppage of work at the plant caused a sub-

stantial shutdown where the strike took place. The court held that "stoppage of work," as used in the act, refers to the individual work of the employee. One of the justices in a concurring opinion aptly said:

"The thing which must exist at the factory is the labor dispute, not the stoppage of work. When a labor dispute at a factory results in a stoppage of work by the individual he is disqualified to receive benefits if he is a participant in the dispute and is not working by reason of his own voluntary desire, regardless of whether the factory stops or does not stop operating."

The claimant voluntarily stopped work and joined with several others in a strike, and the statute of this State bars granting him compensation.

The award in the circuit court should be reversed, with costs against claimant.

BUTZEL, J., concurred with WIEST, J.  REID, J., took no part in the decision of this case.