PEOPLE v WRIGHT

Docket No. 80146. Argued October 4, 1988 (Calendar No. 3). Decided
    March 21, 1989.
    Kenneth D. Wright pled guilty in the Kalamazoo Circuit Court,
    C. H. Mullen, J., of first-degree criminal sexual conduct and of
    being an habitual offender, second offense. The Court of Ap-
    peals, BEASLEY and C. L. HORN, JJ. (BRONSON, P.J., not partici-
    pating), affirmed the defendant's conviction in an unpublished
    opinion per curiam, but, finding that the minimum sentence
    imposed exceeded two-thirds of the maximum contrary to the
    rule of People v Tanner, 387 Mich 683 (1972), modified the
    sentence to conform to the rule (Docket No. 90412). The people
    appeal.
        In an opinion by Justice ARCHER, joined by Chief Justice
    RILEY and Justices LEVIN, BRICKLEY, CAVANAGH, and GRIFFIN,
    the Supreme Court held:
        Any sentence for a term of years imposed pursuant to § 10 of
    the habitual offender act, MCL 769.10; MSA 28.1082, is subject
    to the rule that its minimum term may not exceed two-thirds
    of its maximum.
        Section 10(2) of the habitual offender act provides that sen-
    tences of imprisonment for any term of years must contain
    minimum and maximum terms. Such sentences are to be
    considered indeterminate sentences. When the term "indeter-
    minate sentence" was added by 1978 PA 77, it had been
    interpreted by the Court in People v Tanner, to provide for
    meaningful intervals between the minimum and maximum
    terms and to mean that any sentence which provides a mini-
    mum term which exceeds two-thirds of the maximum is im-
    proper as failing to comply with the indeterminate sentence
    act. The Legislature is presumed to have intended the same
    meaning and has declined to disturb holdings which have
    required such intervals.
        Justice BOYLE, concurring, stated that the habitual offender

REFERENCES

Am Jur 2d, Habitual Criminals and Subsequent Offenders § 30.

Comment Note.—Length of sentence as violation of constitutional
    provisions prohibiting cruel and unusual punishment. 33 ALR3d
    335.

statutes as applied in this case were intended to incorporate case law providing that a minimum term of an indeterminate sentence may not exceed two-thirds of the maximum term. The Legislature has not indicated an intent to restrict the parole board's jurisdiction after the service of the calendar minimum, and the courts should not constrict the board's authority by sentencing an habitual offender to a minimum term that effectively deprives the board of discretion.

Affirmed.

CRIMINAL LAW — HABITUAL OFFENDERS — INDETERMINATE SENTENCES.

Any sentence for a term of years imposed pursuant to the habitual offender act is subject to the rule that its minimum term may not exceed two-thirds of its maximum (MCL 769.10; MSA 28.1082).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *James G. Gregart,* Prosecuting Attorney, and *Michael H. Dzialowski,* Assistant Prosecuting Attorney, for the people.

*Milton J. Marovich* and *Patricia L. Gambill* for the defendant.

Amicus Curiae:

State Appellate Defender (by *Sheila N. Robertson* and *Anne M. Yantus).*

ARCHER, J. We granted leave to appeal limited to the issue whether *People v Tanner,* 387 Mich 683; 199 NW2d 202 (1972), which held that where an indeterminate sentence is required by statute, the minimum sentence imposed may not exceed two-thirds of the maximum sentence, applies to sentencing imposed on a person convicted as an habitual offender.

We hold that any sentence for a term of years imposed pursuant to § 10 of the habitual offender

act, MCL 769.10; MSA 28.1082,[1] is subject to the rule that the minimum term of years may not exceed two-thirds of the maximum term of years. Accordingly, we affirm the judgment of the Court of Appeals, which modified the defendant's sentence in compliance with the two-thirds rule of *People v Tanner.*

I

The defendant, Kenneth Duane Wright, pled guilty to one count of criminal sexual conduct in the first degree and to a second count of being an habitual offender, second offense. In exchange for the defendant's guilty plea, the prosecution agreed to recommend a maximum term of imprisonment

---

[1] (1) If a person has been convicted of a felony, an attempt to commit a felony, or both, whether the conviction occurred in this state or would have been for a felony in this state if the conviction obtained outside this state had been obtained in this state, and that person commits a subsequent felony within this state, the person shall be punished upon conviction as follows:

(a) If the subsequent felony is punishable upon a first conviction by imprisonment for a term less than life, then the court, except as otherwise provided in this section or in section 1 of chapter 11, may place the person on probation or sentence the person to imprisonment for a maximum term which is not more than 1½ times the longest term prescribed for a first conviction of that offense or for a lesser term.

(b) If the subsequent felony is punishable upon a first conviction by imprisonment for life, then the court, except as otherwise provided in this section or in section 1 of chapter 11, may place the person on probation or sentence the person to imprisonment for life or for a lesser term.

(c) If the subsequent felony is a major controlled substance offense, the person shall be punished as provided by Act No. 196 of the Public Acts of 1971, as amended, being sections 335.301 to 335.367 of the Michigan Compiled Laws.

(2) If the court pursuant to this section imposes a sentence of imprisonment for any term of years, the court shall fix the length of both the minimum and maximum sentence within any specified limits in terms of years or fraction thereof and the sentence so imposed shall be considered an indeterminate sentence.

of thirty years, but "retain[ed] its right to recommend the minimum sentence."[2]

The defendant was subject to receive an enhanced sentence of imprisonment pursuant to the habitual offender act, MCL 769.10; MSA 28.1082. He was sentenced under the act to serve a prison

---

[2] The prosecutor's reservation of the right to recommend a minimum sentence in the future was apparently a surprise to the defendant. At the session of the court wherein the defendant pleaded guilty, the court attempted to ascertain whether the defendant understood the plea bargain. After the prosecutor recited the terms of the agreement, the following colloquy occurred between the court and the defendant:

*The Court:* And do you understand what has been said?

\* \* \*

*The Defendant:* Yes, sir, but it was my understanding that the prosecution was going to recommend 30 years as a maximum sentence and I was to plead as a second offender, but until now I knew nothing about retaining the right to recommend whatever minimum.

*The Court:* Well, I will read it again. The prosecution will recommend the 30-year maximum sentence and retain its right to recommend the minimum sentence.

*The Defendant:* Yes, sir.

Several months later at the hearing on the defendant's motion to withdraw his guilty plea, this exchange occurred between defendant and his appellate counsel:

*Q. [Counsel]:* All right. Sir, will you explain to the Court in your own words why you feel that you had ineffective assistance of counsel?

*A. [Defendant]:* Well, as [trial defense counsel] started explaining some of the legal procedures, such as giving a guilty plea to the Court, and the, *he tried to explain the guidelines to me and the one-third, I think it is called the Turner Rule [sic] or something like that.* He, I don't think he gave me enough, how should I say it. A reasonable explanation, you know, for guidelines and Turner Rule and all that. And I wasn't really given enough time to make a decision, a decision, I am talking about a proper decision, five minutes I don't believe is enough time to make a decision that is going to—going to last the rest of my life. And that is what I was given each time was about five or ten minutes. [Emphasis added.]

Thus, it appears that defense counsel and defendant relied on *Tanner* in their plea-bargain considerations.

term of not less than twenty-eight nor more than thirty years in prison.

In the Court of Appeals, the defendant asserted, inter alia, that his sentence violated the rule of *People v Tanner, supra,* in that the minimum term exceeded two-thirds of the maximum term. The Court of Appeals granted defendant relief on this issue and modified his sentence to a term of not less than twenty nor more than thirty years in prison.[3]

The prosecutor appealed, seeking to reverse the Court of Appeals modification of the defendant's sentence. We granted the prosecutor's application for leave to appeal.[4] We affirm the decision of the Court of Appeals.

II

The question presented requires this Court to give effect to the language of § 10 of the habitual offender act, in light of the legislative purpose in drafting and subsequently amending the statute. This Court has stated:

> Once legislative intent is discerned, it must be given effect, even if doing so might appear to conflict with the letter of the statute. " '[A] thing which is within the spirit of a statute is within the statute, although not within the letter; and a thing within the letter is not within the statute, unless within the intention.' " [*People v Stoudemire,* 429 Mich 262, 266; 414 NW2d 693 (1987). Citation omitted.]

A review of this Court's holding and rationale in *People v Tanner, supra,* together with fundamen-

---

[3] *People v Wright,* unpublished opinion per curiam of the Court of Appeals, decided December 29, 1986 (Docket No. 90412).

[4] *People v Wright,* 430 Mich 856 (1988).

tal principles of statutory construction, leads to the conclusion that the Legislature intended to provide a meaningful interval between minimum and maximum sentences imposed pursuant to § 10 of the act.

### A

In *People v Tanner,* the defendant, who had pleaded guilty to manslaughter, was sentenced to serve fourteen years, eleven months to fifteen years in prison. The Court addressed itself to the purely legal question whether the defendant's sentence was in fact "indeterminate," as contemplated by the provisions of the indeterminate sentence act.[5] *Tanner, supra* at 688. The Court stated:

> Thus, turning to the precise proposition involved, we are convinced that 30 days is not a sufficient interval of time to guarantee that the corrections authorities will be able to exercise their jurisdiction or judgment with any practicality. The net effect of such severe judicial limitation on indeterminate sentencing is to frustrate the intended effect of indeterminate sentencing.
> *Convinced as we are, that a sentence with too*

---

[5] Sec. 8. When a person is convicted for the first time for the commission of a felony, and the punishment prescribed by law for that offense may be imprisonment in a state prison, the court imposing sentence shall not fix a definite term of imprisonment, but shall fix a minimum term, except as otherwise provided in this chapter. The maximum penalty provided by law shall be the maximum sentence in all cases except as provided in this chapter and shall be stated by the judge in imposing the sentence. Before or at the time of imposing the sentence the judge shall ascertain by examination of the convict on oath, or otherwise, and by other evidence as can be obtained tending to indicate briefly the causes of the criminal character or conduct of the convict, which facts and other facts which appear to be pertinent in the case, the judge shall cause to be entered upon the minutes of the court. [MCL 769.8; MSA 28.1080.]

*short an interval between minimum and maxi-*
*mum is not indeterminate, we hold that any sen-*
*tence which provides for a minimum exceeding*
*two-thirds of the maximum is improper as failing*
*to comply with the indeterminate sentence act.*
[Emphasis added. *Id.* at 689-690.]

This cogent and concise statement of policy pro-
vides for fundamental fairness in the sentencing
process without undue restriction of trial judges'
ability to tailor sentences to fit the individual
defendant.

Similar policy considerations exist with respect
to repeat offenders. The ability of correctional
authorities to consider subsequent developments in
setting the actual date of release remains vital to
the functions of an effective criminal justice sys-
tem.[6] In amending the habitual offender act, the
Legislature sought to incorporate this policy into
the sentencing of habitual offenders through elimi-
nation of determinate sentences.

B

As amended by 1978 PA 77, § 10 of Michigan's
habitual offender act provides:

(2) If the court pursuant to this section imposes
a sentence of imprisonment for any term of years,
the court shall fix the length of both the minimum
and maximum sentence within any specified limits
in terms of years or fraction thereof and the

---

[6] See 3 ABA Standards for Criminal Justice (2d ed), Commentary on
Standard 18-4.3, pp 18-265 to 18-266. The American Bar Association
recommends that the minimum term for habitual offenders be fixed
in the same manner as for nonhabitual criminals. 3 ABA Standards
for Criminal Justice (2d ed), Standard 18-4.4(b)(iii), p 18-276. The ABA
recommends indeterminate sentencing in general, with a provision for
flat minimum terms for sentences under three years. For the longer,
indeterminate term, the ABA recommends an increasing interval of
indeterminacy as the maximum sentence increases. 3 ABA Standards
for Criminal Justice (2d ed), Standard 18-4.3, pp 18-263 to 18-264.

sentence so imposed shall be considered an inde-
terminate sentence. [MCL 769.10(2); MSA
28.1082(2).]

Prior to the 1978 amendment, the statute pro-
vided only for a term of imprisonment for habitual
offenders bearing a certain relationship to the
longest term prescribed for the underlying felony.[7]
There was no requirement in the prior statute
that the court impose both a minimum and maxi-
mum sentence. Accordingly, the prior statute was
interpreted to allow the imposition of a determi-
nate sentence on an habitual offender.[8] *In re Wil-
son,* 295 Mich 179, 184; 294 NW 145 (1940); *People
v Ungurean,* 51 Mich App 262, 267; 214 NW2d 873
(1974), lv den 395 Mich 805 (1975).

Appellant contends that the Legislature's use of
the phrase "shall be considered an indeterminate
sentence" in the amended version of the statute,

---

[7] Prior to the 1978 amendment, § 10 of the habitual offender act
provided as follows:

A person, who after having been convicted within this state
of a felony, or an attempt to commit a felony, or, under the
laws of any other state, government or country, of a crime
which if committed within this state, would be a felony, com-
mits any felony within this state, is punishable upon conviction
as follows: If the subsequent felony is such that, upon a first
conviction the offender would be punishable by imprisonment
for any term less than his natural life, then such person may
be placed on probation *or sentenced to imprisonment for a
term not more than 1½ times the longest term* prescribed for a
first conviction of such offense *or for any lesser term* in the
discretion of the court; if the subsequent felony is such that,
upon a first conviction the offender might be punished by
imprisonment for life then such person may be placed on
probation *or sentenced to imprisonment for life or for any
lesser term* in the discretion of the court. [MCL 769.10; MSA
28.1082. Emphasis added.]

[8] Only a person actually charged and convicted as an habitual
offender pursuant to MCL 769.13; MSA 28.1085 was subject to receive
a determinate sentence. *Brinson v Genesee Circuit Judge,* 403 Mich
676, 684; 272 NW2d 513 (1978).

merely indicates that if the sentence in fact has a minimum and a maximum term, it will be considered an indeterminate sentence, and nothing more. We are wholly unpersuaded.

If the Legislature had not been concerned with providing a significant period of indeterminacy in sentences imposed pursuant to the habitual offender act, there would have been no need to amend the statute. It is axiomatic that when the Legislature effects a change in the provisions of a statute, a presumption arises that the Legislature intends a substantive change in the law. *Lawrence Baking Co v Unemployment Compensation Comm,* 308 Mich 198, 205; 13 NW2d 260 (1944); 1A Sands, Sutherland Statutory Construction (4th ed), § 22.30, p 265. See also *Sam v Balardo,* 411 Mich 405; 308 NW2d 142 (1981); *Detroit Edison Co v Janosz,* 350 Mich 606, 613; 87 NW2d 126 (1957).

When a term has received past judicial interpretation, the Legislature is presumed to have intended the same meaning. *People v Powell,* 280 Mich 699, 703; 274 NW 372 (1937). The Legislature's use of the phrase "indeterminate sentence" in § 10(2) of the act, expresses an intent to incorporate that term into the statute in its familiar legal sense. Accordingly, it must be presumed that the Legislature intended to use the phrase "indeterminate sentence" as defined by this Court in *People v Tanner, supra.* The Legislature employed the phrase "indeterminate sentence" with the requirement immediately preceding it that "the court shall fix the length of both the minimum and maximum sentence." Its intent was to provide for indeterminate sentences with a meaningful interval between the minimum and maximum term. It would be disingenuous for this Court not to acknowledge this obvious intent.

Since the 1978 amendment of the habitual of-

fender act, the Court of Appeals has, with one
exception, uniformly held that habitual offenders
must receive indeterminate sentences with a mini-
mum term of no more than two-thirds of the
maximum. *People v Stevens,* 138 Mich App 438;
360 NW2d 216 (1984); *People v Roby,* 145 Mich
App 138; 377 NW2d 366 (1985), lv den 424 Mich
887 (1986); *People v Morin,* 146 Mich App 629; 381
NW2d 416 (1985); contra *People v Freeney,* 166
Mich App 128; 419 NW2d 754 (1988). See also
*People v Langham,* 101 Mich App 391; 300 NW2d
572 (1980), lv den 410 Mich 892 (1981) (a determi-
nate or "flat" sentence held improper under the
habitual offender act).[9] The Legislature has de-
clined to disturb the holdings of this Court and the
Court of Appeals, which require a meaningful
interval of discretion for corrections authorities
where an indeterminate sentence is required by
statute. In light of the Legislature's acquiescence
to the statutory interpretation and policy rationale
set forth in *People v Tanner,* we continue to
adhere to the analysis and decision therein.

### CONCLUSION

We hold that any sentence for a term of years
imposed pursuant to § 10 of the habitual offender
act, MCL 769.10; MSA 28.1082, is subject to the
rule that the minimum term of years may not
exceed two-thirds of the maximum term of years.
Therefore, we affirm the judgment of the Court of
Appeals, modifying the defendant's sentence to

---

[9] Although the Court in *Langham* did not specifically address the
issue whether the *Tanner* rule applied to sentences under the habit-
ual offender act, it must be noted that upon determining that a flat
sentence of eight years was improper, the panel did not remand for
resentencing. Rather, it amended the flat term to an indeterminate
sentence of five years, four months to eight years, consistent with the
rule of *Tanner.*

comply with the two-thirds rule of *People v Tanner.*

Riley, C.J., and Levin, Brickley, Cavanagh, and Griffin, JJ., concurred with Archer, J.

Boyle, J. (*concurring*). I write separately to explain why I am persuaded that the majority correctly concludes that the Legislature did not intend to permit trial courts to sentence an individual in habitual offender status to a minimum term that effectively deprives corrections officials of discretion.

The public demand for reform of release policy expressed in Proposal B was an unequivocal directive to reallocate authority between trial courts and corrections officials as to Proposal B offenses. However, the Legislature did not similarly act to prohibit parole board jurisdiction upon the basis of the habitual offender status, as such. While it is arguable that the Legislature intended to give trial judges unlimited discretion in sentencing defendants convicted as habitual offenders, absent a clear Legislative directive that parole board jurisdiction can be circumvented on the basis of habitual offender status alone, I concur in today's result.

I

Prior to 1978, a trial court could impose only a determinate sentence, that is, a sentence for a fixed term of years upon a defendant convicted as an habitual offender. MCL 769.10-769.12; MSA 28.1082-28.1084. Sections 10, 11, and 12 of the habitual offender act then provided that the trial judge, sentencing a defendant to a term of years imposed a maximum term, either the maximum

allowed under the statute,[1] or a lesser term at the judge's discretion. No minimum term was set.

For offenders charged as first offenders, the only punishment authorized by the Legislature was an indeterminate sentence where the maximum was imposed by law and the minimum was to be determined by the sentencing courts. MCL 769.8; MSA 28.1080. The Legislature had thus created two types of sentences, a flat determinate sentence for habitual offenders and an indeterminate sentence for first-time offenders.

Under the indeterminate sentence act, judicial discretion operated only to establish the minimum sentence.[2] This type of structure, a legislatively set maximum, and a judicially set minimum, transferred the discretion from the sentencing court to the parole board in regard to the actual length of service of a defendant's prison term. Thus, a function of the indeterminate sentence structure itself was to apportion the authority to determine a defendant's actual period of confinement between the court and the parole board.

In *People v Tanner,* 387 Mich 683; 199 NW2d 202 (1972), this Court addressed the issue whether an indeterminate sentence with too short an interval between the minimum and maximum term satisfied the policy underlying indeterminate sentencing. The Court concluded in *Tanner* that an

[1] Under the habitual offender act the court would first determine the punishment authorized on the principal charge and then sentence the defendant to a term not greater than one and one-half times, or whatever the statute proscribed, the maximum term authorized for a first conviction of the offense. MCL 769.10(1)(a), 769.11(1)(a), 769.12(1)(a); MSA 28.1082(1)(a), 28.1083(1)(a), 28.1084(1)(a).

[2] A variety of indeterminate sentencing structures could exist: (1) a sentence could be wholly indeterminate between a legislatively set minimum and maximum; (2) a sentence could have a legislatively set maximum and a judicially set minimum, or vice versa; or (3) a sentence could have a judicially set minimum and a maximum established within legislatively proscribed levels. 3 ABA Standards for Criminal Justice (2d ed), Standard 18-4.1, Commentary, p 18-240.

indeterminate sentence with too short an interval between minimum and maximum frustrated the effect of the indeterminate sentencing act because it did not allow parole authorities any meaningful time within which to exercise their authority.[3] Therefore the Court in *Tanner* held that a sentence which provided for a minimum exceeding two-thirds of the maximum was improper.[4] *Id.,* pp 689-690. The structure of the indeterminate sentencing act to which the holding of *Tanner* was addressed was a structure with legislatively set maximums and judicially set minimums, that emphasized the authority of the corrections authority to determine the length of a defendant's actual term of imprisonment.

II

In 1978, the Legislature made substantial changes throughout the provisions of the Code of Criminal Procedure, including the sentencing provisions of the habitual offender act. The 1978 amendments of the habitual criminal statute directed the trial court to set both the maximum and minimum terms of the sentence, fixed outer limits as the maximum term allowed under the statute,[5] and provided that the sentence would be

[3] While the majority in *Tanner* did not specifically identify the manner in which the defendant's sentence frustrated the intended effect of indeterminate sentencing, the rationale appears to be that there must be a sufficient interval of time to guarantee that the corrections authorities have some time within which to exercise their judgment in determining a prisoner's release date in order to serve the rehabilitative goal of the indeterminate sentence structure. *People v Tanner,* 387 Mich 683, 690; 199 NW2d 202 (1978).

[4] The only restriction the majority of the Court imposed on the application of the holding in *Tanner* was that it would not apply to sentencing under statutes for which the only punishment prescribed was imprisonment for life, or those offenses providing for a mandatory minimum. *Id.,* p 690.

[5] While the statute provided that the court must "fix the length of

considered an indeterminate sentence. See subsection (2) of 769.10-769.12; MSA 28.1082-28.1084.

However, while providing that such a sentence was "indeterminate," the amendments maintained the feature of prior habitual sentence acts that the judge was to determine the maximum sentence within any stated maximum. Thus, unlike a sentence under the indeterminate sentence section which provides that the maximum penalty provided by law "*shall be* the maximum sentence in all cases,"[6] all three sections of the habitual criminal act authorize the sentencing judge to sentence a defendant for a minimum term and for the maximum term authorized under the statute or "for a lesser term."[7] Unless the words "or for a lesser term" are surplusage,[8] the obvious intent of the Legislature was to give the trial court discretion to set the maximum term of the defendant's sentence. Given the fact that the judge was thus authorized to set the maximum term within the outer limit proscribed, and that the Legislature did not restrict the trial judge in regard to the minimum term, it appears that this "indeterminate" scheme is not the type of structure to which the *Tanner* two-thirds/one-third rule applied. *Tanner* emphasized the need for parole board discretion to determine a defendant's actual term of imprisonment in the context of a legislatively proscribed maximum sentence. By contrast, legislative authorization of judicial control over the

both the minimum and maximum sentence within any specified limits," the only limit specified in the statute was the maximum term authorized for the underlying offense, increased accordingly. See, for example, MCL 769.10(2); MSA 28.1082(2) and MCL 769.10(1)(a); MSA 28.1082(1)(a).

[6] MCL 769.8; MSA 28.1080.

[7] See subsections (1)(a) and (b) of MCL 769.10-769.12; MSA 28.1082-28.1084.

[8] *Metropolitan Council No 23, AFSCME v Oakland Co Prosecutor,* 409 Mich 299; 294 NW2d 578 (1980).

maximum and minimum sentences suggests a possible reallocation of authority between the courts and corrections.

The contention that the Legislature did not intend that the habitual criminal acts incorporate the *Tanner* formulation finds its strongest support in the context of indeterminate sentences imposed on persons convicted as first offenders under the controlled substance act. Unlike the sentence structure at issue in *Tanner* where the judge was authorized only to set the minimum within the maximum term provided by law, these provisions follow the format of the habitual criminal sections and direct the court to set *both* a minimum and a maximum term.[9]

---

[9] Effective May 12, 1978, former MCL 335.341(1)(a); MSA 18.1070(41)(1)(a) was amended to provide for sentences within specified minimum and maximum terms for delivery of certain specified controlled substances in the following amounts:

(i) . . . an amount of 650 grams or more of any mixture containing that substance is guilty of a felony and shall be imprisoned for life.

(ii) . . . an amount of 225 grams or more, but less than 650 grams, of any mixture containing that substance is guilty of a felony and shall be imprisoned for not less than 20 years nor more than 30 years.

(iii) . . . an amount of 50 grams or more, but less than 225 grams, of any mixture containing that substance is guilty of a felony and shall be either imprisoned for not less than 10 years nor more than 20 years or placed on probation for life. [MCL 333.7403(2)(a)(i)-(iii); MSA 14.15(7403)(2)(a)(i)-(iii).]

In addition, the following change was made in the indeterminate sentencing act:

Subsection 3 of § 9 was added to that statute by 1978 PA 77:

In cases involving a major controlled substance offense for which the court is directed by law to impose a sentence which cannot be less than a specified term of years nor more than a specified term of years, the court in imposing sentence shall fix the length of both the minimum and maximum sentence within those specified limits, in terms of years or fraction thereof, and the sentence so imposed shall be considered an indeterminate sentence. [MCL 769.9(3); MSA 28.1081(3).]

This Court held in *People v Perez*, 417 Mich 1100.21 (1983), that the statutory minimum and maximum sentences for major controlled substances were not mandatory, except in so far as they established the outer limits within which the sentence must be fixed. Thus, for example, given the fact that the judge is authorized to set the maximum term within the mandatory outer limit, application of *Tanner* to a sentence for a violation of the controlled substance act with a maximum term of twenty-five years would have the anomalous effect of repealing the mandatory minimum of twenty years required by the very same Legislature, a dubious construction at best. The use of the same language in §§ 10, 11, and 12 of the habitual criminal act supports the contention that the Legislature did not intend to circumscribe trial judge discretion with the two-third minimum *Tanner* rule.[10]

However, despite the differences between the indeterminate sentence to which *Tanner* applies and the indeterminate sentences authorized under the habitual criminal act,[11] we are unable to conclude that the Legislature intended to permit

[10] In addition to the discretion given to the sentencing court in regard to the minimum and maximum terms of the defendant's sentence, the habitual offender sections give the judge what seems to be complete authority to determine a defendant's actual release date. The statute specifically provides:

Offenders sentenced under this section or section 10 or 11 for offenses other than a major controlled substance offense shall not be eligible for parole before the expiration of the minimum term fixed by the sentencing judge at the time of sentence without the written approval of the sentencing judge or a successor. [MCL 769.12(3); MSA 28.1084(3).]

[11] Under Michigan law the defendant must be given advance notice that the trial will be followed by an habitual criminal proceeding although this is not required as a matter of due process. *Oyler v Boles*, 368 US 448, 452; 82 S Ct 501; 7 L Ed 2d 446 (1962).

judges to eliminate parole board authority solely on the basis of habitual offender status.

Prior to the passage of Proposal B in 1978, parole authorities treated habitual offenders and first offenders in the same manner in regard to the computation of credits to reduce a defendant's minimum term of imprisonment. In 1977, the Court of Appeals recognized a distinction in the point at which the prisoner came under the exclusive direction and jurisdiction of the parole board. While a first offender was subject to the jurisdiction of the parole board when the minimum term of the sentence minus allowances was served, and the eventual release was considered discretionary and unreviewable, if in compliance with the law, an habitual offender was not subject to exclusive jurisdiction of the parole board and could not be released prior to the expiration of the minimum term fixed by the sentencing judge without written approval of the judge or a successor.[12]

In 1978, Proposal B was enacted into law and the statutes governing parole board authority were amended. These statutes created two basic types of offenders: Proposal B offenders and non-Proposal B offenders. Distinctions between prisoners in regard to parole eligibility were thereafter based on whether the underlying offense for which a person was convicted was a "Proposal B" offense[13] rather

---

[12] See n 9, MCL 769.12; MSA 28.1084, and *Oakland Prosecutor v Parole Bd*, 78 Mich App 111, 117; 259 NW2d 385 (1977).

[13] Amended in 1978, the statute provided:

(b) A parole shall not be granted to a prisoner until the prisoner has served the minimum term imposed by the court less allowances for good time or special good time to which the prisoner may be entitled to by statute, except that prisoners shall be eligible for parole prior to the expiration of their minimum terms of imprisonment whenever the sentencing judge or the judge's successor in office gives written approval of the parole of the prisoner prior to the expiration of the minimum terms of imprisonment.

than whether the person was an habitual offender.

There is no indication of an intention by the Legislature to alter the prior practice of treating offenders in an habitual status differently than persons convicted as first offenders.[14] Indeed both are treated the same once they have served the calendar minimum and the parole board has jurisdiction in each instance. Stated otherwise, while the purpose of the habitual criminal provisions is to augment the punishment for subsequent offenses, and the climate surrounding Proposal B

(c) Notwithstanding the provisions of subsection (b), a parole shall not be granted to a prisoner sentenced for the commission of a crime described in section 33b until the prisoner has served the minimum term imposed by the court, which minimum term shall not be diminished by allowances for good time, special good time, or special parole. [MCL 791.233; MSA 28.2303.]

House Bill 6166, ultimately enacted as 1982 PA 458 was introduced in response to the effects of "Proposal B," i.e., prison overcrowding and the fact that "Proposal B" seemed to have been ineffective as a deterrent to crime. House Bill Analysis 6165-6166, December 7, 1982.

The new provision provided that

(b) A parole shall not be granted to a prisoner until the prisoner has served the minimum term imposed by the court less allowances for good time or special good time to which the prisoner may be entitled to by statute, except that prisoners shall be eligible for parole prior to the expiration of their minimum terms of imprisonment whenever the sentencing judge, or the judge's successor in office, gives written approval of the parole of the prisoner prior to the expiration of the minimum terms of imprisonment.

(c) Notwithstanding the provisions of subdivision (b), a parole shall not be granted to a prisoner sentenced for the commission of a crime described in section 33b(a) to (cc) until the prisoner has served the minimum term imposed by the court less an allowance for disciplinary credits as provided in section 33(5) of Act No. 118 of the Public Acts of 1893, being section 800.33 of the Michigan Compiled Laws. A prisoner described in this subdivision is not eligible for special parole.

[14] The only exceptions to this are the treatment of Proposal B offenders and the fact that an habitual offender needs the judge's authorization for release prior to the expiration of the calendar minimum.

clearly indicated public opposition to early release, the Legislature did not modify the treatment of non-Proposal B offenders other than as indicated. Thus, non-Proposal B habitual offenders are eligible for special parole prior to expiration of the calendar minimum with the court's approval, and Proposal B offenders are not eligible for special parole even with the court's consent, MCL 791.233(1)(b); MSA 28.2303(1)(b). Parole authorities apply rules appropriate for each prisoner on the basis of the underlying offense for which the offender has been convicted.[15]

Parole board release policies are of course not binding on this Court. However, I find it both instructive and persuasive that the Legislature has differentiated the authority of the corrections officials only by precluding special parole for Proposal B offenders. Since the Legislature has not indicated an intent to restrict the jurisdiction of the parole board after service of the calendar minimum,[16] I conclude that it has not permitted courts to constrict parole board authority by failing to provide a meaningful interval between the minimum and maximum term.

---

[15] Michigan Department of Corrections Policy Directive 45.14, Habitual Offenders (August 1, 1988).

[16] The Legislature has, of course, restricted the parole board's authority by the imposition of mandatory minimums and the requirement of judicial approval prior to precalendar release.