FORD CREDIT CANADA LEASING, LIMITED v DePAUL

Docket No. 229735. Submitted October 9, 2001, at Marquette. Decided October 19, 2001, at 9:05 A.M.

Ford Credit Canada Leasing, Limited, brought an action in the Chippewa Circuit Court against Joseph DePaul and Kara Cloudman on February 15, 2000, for claim and delivery of a vehicle currently owned by the defendants. Central Savings Bank, which had financed the purchase of the vehicle for the defendants, was allowed to intervene in the action as a defendant. The vehicle originally had been purchased in Ontario, Canada, by a Canadian corporation and the plaintiff had provided the financing. The plaintiff had perfected its security interest in accordance with Canadian law. The province of Ontario, however, does not require a lien notation on the documents of ownership and does not issue a certificate of title with the purchase of a vehicle. Payments on the loan were not made after a second Canadian corporation assumed the debt. Andy Boston brought the vehicle to Michigan without the plaintiff's knowledge and placed it for sale. The defendants signed a bill of sale and received the keys and the Canadian vehicle registration, but not possession, after Boston indicated that there were no liens on the vehicle. The Michigan Secretary of State issued a certificate of title that listed Central Savings Bank as the sole leinholder. The bank then provided the purchase money to the defendants, who paid Boston and took possession. The plaintiff, noting the outstanding debt from the original sale, brought an action five months after the vehicle was brought to Michigan, claiming that it held a superior interest. The court, Nicholas J. Lambros, J., denied the plaintiff's motion for summary disposition and granted the defendants' motion for summary disposition on the basis that the plaintiff had not perfected its security interest in Michigan within the four-month period following the removal of the vehicle from Canada, as set forth in subsection 9103(1)(d)(i) of the Uniform Commercial Code, MCL 440.9103(1)(d)(i), before its amendment by 2000 PA 348, effective July 1, 2001. The plaintiff appealed.

The Court of Appeals held:

The trial court correctly granted summary disposition in favor of the defendants, but summary disposition should have been granted

on the basis of subsection 9103(2)(d) rather than subsection 9103(1)(d)(i). Subsection 9103(2)(d) was designed to protect an innocent purchaser of goods moved from noncertificate jurisdictions (like Ontario, Canada) to certificate jurisdictions (like Michigan). The foreign security interest of the plaintiff is subordinate to the interests of the defendants, who pursuant to the standards of subsection 9103(2)(d) are innocent purchasers of the encumbered goods entitled to priority under these particular circumstances.

Affirmed.

SECURED TRANSACTIONS — UNIFORM COMMERCIAL CODE — NONPROFESSIONAL BUYERS.

Subsection 9103(2)(d) of the Uniform Commercial Code before amendment by 2000 PA 348 permitted a nonprofessional buyer to take free of any security interest not noted on a certificate of title where the following five conditions were met: the goods must have been brought into this state while a security interest therein was perfected in any manner under the law of the jurisdiction from which the goods were removed; a certificate of title must have been issued by this state after entry; the certificate must not have shown either that the goods were subject to a security interest or that they might be subject to a security interest not shown on the certificate; the buyer must not have been in the business of selling goods of that kind; and the buyer must have given value and received delivery both after issuance of the certificate and without knowledge of the security interest (MCL 440.9103[2][d], before amendment by 2000 PA 348, effective July 1, 2001).

*Dold, Spath & McKelvie, P.C.* (by *Edward L. Ewald*), for the plaintiff.

*Lewinski & Brewster, P.C.* (by *Paul M. Brewster*), for the defendants.

Before: GRIFFIN, P.J., and MARKEY and METER, JJ.

GRIFFIN, P.J. Plaintiff Ford Credit Canada Leasing, Limited, appeals as of right from the trial court order denying its motion for summary disposition and granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(10). We affirm.

I

Plaintiff brought suit in Michigan for claim and delivery of a 1999 Ford Expedition currently owned by defendants Joseph DePaul and Kara Cloudman (hereafter defendants). Plaintiff holds a foreign lien, valid in Canada, on the vehicle. Plaintiff financed the original purchase of the vehicle in March 1999, when a Canadian company, 1138891 Ontario, Inc. (Ontario, Inc. #1), bought the vehicle from a Canadian dealership located in Ottawa, Canada. Ontario, Inc. #1 purchased the vehicle pursuant to a retail installment sales contract that was immediately assigned to plaintiff. Plaintiff financed one hundred percent of the purchase price, which totaled over $50,000 in Canadian currency. Plaintiff perfected its security interest in the vehicle in accordance with Ontario law by filing a financing statement with the Canadian Securities Registration System for the province of Ontario on April 6, 1999.[1] After the purchase of the vehicle, a second Canadian corporation, 1309877 Ontario, Inc. (Ontario, Inc. #2), assumed Ontario, Inc. #1's obligations under the retail installment contract. Such assumption was also registered with the Canadian Securities Registration System. After the assumption of the debt by Ontario, Inc. #2, plaintiff stopped receiving monthly installment payments under the retail installment contract. The account remained in default, with a balance of over $51,000 (Canadian currency) owed to plaintiff at the time the present suit was initiated.

---

[1] The province of Ontario does not require a lien notation on the documents of ownership. Moreover, Ontario is a nontitle province; the Ministry of Transportation does not issue a certificate of title with the purchase of a vehicle.

Unbeknownst to plaintiff, the vehicle in question was brought to Michigan from Canada in mid-September 1999 by Andy Boston, proprietor of a marine business in Sault Ste. Marie, Ontario. Boston placed the vehicle for sale at a marina in Sault Ste. Marie, Michigan, until late October 1999, when he had the vehicle moved to a marina in Walloon Lake, near Petoskey. At that time, defendant DePaul learned that the vehicle was for sale and contacted Mr. Boston in Canada to inquire about it. Defendants subsequently signed a bill of sale dated October 29, 1999, at which time Boston gave DePaul the Canadian vehicle registration and keys to the vehicle (DePaul did not take possession of the vehicle at that time). According to the deposition testimony of defendant DePaul, the paperwork given to him by Mr. Boston indicated that the vehicle was owned by a corporation. DePaul testified that he never questioned Boston regarding why the corporation's name was on the bill of sale and vehicle registration; he "assumed that it was a corporation that he [Boston] owned." DePaul testified that Boston told him there were no liens on the vehicle.

Defendants DePaul and Cloudman then applied for a vehicle registration and a certificate of title with the state of Michigan. In their application, defendants provided the Canadian registration papers, identified themselves as the prospective owners of the vehicle, and listed intervening defendant Central Savings Bank, from which defendants sought a loan to pay for the purchase, as the sole lienholder. On November 3, 1999, a certificate of title was issued by the Michigan Secretary of State, listing defendants as owners of the vehicle and Central Savings Bank as the sole secured party. After receiving the "clean" Michigan title, defen-

dants obtained the funds from Central Savings Bank,[2] turned them over to Mr. Boston, and took possession of the vehicle.

Asserting that it was never informed of the removal of the vehicle from Canada, or its sale, registration, or titling in Michigan, and noting that it was never paid in full on the original sales contract obligation assumed by Ontario, Inc. #2, plaintiff brought suit for claim and delivery against defendants in the Chippewa Circuit Court on February 15, 2000, five months after the vehicle had been brought into Michigan from Canada. Plaintiff maintained that its security interest, perfected in Canada before the sale of the vehicle to defendants in Michigan, was superior to the interests of defendants.

Both parties filed motions for summary disposition pursuant to MCR 2.116(C)(10). Following oral argument on the motions, the trial court denied plaintiff's motion for summary disposition and granted defendants' motion. In rendering its decision, the trial court held that plaintiff had not perfected its security interest in Michigan within the requisite four-month period following the removal of the vehicle from Canada, as set forth in subsection 9103(1)(d)(i) of the Uniform Commercial Code, MCL 440.9103(1)(d)(i).[3] Plaintiff now appeals.

---

[2] According to the affidavit of John Allison, a vice president of Central Savings Bank who handled defendants' loan transaction, the installment loan contract signed by defendants on November 1, 1999, was contingent on the issuance of a clean certificate of title by the state of Michigan.

[3] Article 9 of the Uniform Commercial Code, including MCL 440.9103, has been substantially amended by 2000 PA 348, effective July 1, 2001. However, the amendments do not affect an action such as the present one commenced before the effective date of the amendatory act.

II

We review a trial court's decision on a motion for summary disposition de novo. *Crown Technology Park v D&N Bank, FSB*, 242 Mich App 538, 546; 619 NW2d 66 (2000). A motion under MCR 2.116(C)(10) tests whether there is factual support for a claim. *Crown, supra* at 547. This Court reviews the evidence in the light most favorable to the nonmoving party, who must be given the benefit of every reasonable doubt. *Id.* If no genuine and material factual dispute exists, the court should grant summary disposition. *Id.* The nonmoving party must present more than mere allegations in order to demonstrate that summary disposition ought not to be granted. *Id.*; MCR 2.116(G)(4).

Although the parties in the instant case do not dispute that the Uniform Commercial Code, specifically MCL 440.9103 (§ 9103), which addresses the perfection of security interests in multiple-state transactions, applies to the present case, they offer differing interpretations regarding how that statute should be applied to the present circumstances. MCL 440.9103 provided in pertinent part at the relevant time:

> (1) Documents, instruments, and ordinary goods.
> (a) This subsection applies to documents, instruments . . . and goods *other than those covered by a certificate of title described in subsection (2)* . . . .
>
> \*       \*       \*
>
> (d) When collateral is brought into and kept in this state while subject to a security interest perfected under the law of the jurisdiction from which the collateral was removed, the security interest remains perfected, but if action is required by part 3 of this article to perfect the security interest:

(i) If the action is not taken before the expiration of the period of perfection in the other jurisdiction or the end of 4 months after the collateral is brought into this state, whichever period first expires, the security interest becomes unperfected at the end of that period and is thereafter deemed to have been unperfected as against a person who became a purchaser after removal.

*     *     *

(2) Certificate of title.

(a) *This subsection applies to goods covered by a certificate of title issued under a statute of this state* or of another jurisdiction under the law of which indication of a security interest on the certificate is required as a condition of perfection.

(b) Except as otherwise provided in this subsection, perfection and the effect of perfection or nonperfection of the security interest are governed by the law (including the conflict of laws rules) of the jurisdiction issuing the certificate until 4 months after the goods are removed from that jurisdiction and thereafter until the goods are registered in another jurisdiction, but in any event not beyond surrender of the certificate. After the expiration of that period, the goods are not covered by the certificate of title within the meaning of this section.

*(c) Except with respect to the rights of a buyer described in the next paragraph, a security interest, perfected in another jurisdiction otherwise than by notation on a certificate of title, in goods brought into this state and thereafter covered by a certificate of title issued by this state, is subject to the rules stated in paragraph (d) of subsection (1).*

*(d) If goods are brought into this state while a security interest therein is perfected in any manner under the law of the jurisdiction from which the goods are removed and a certificate of title is issued by the state and the certificate does not show that the goods are subject to the security interest or that they may be subject to security interests not shown on the certificate, the security interest is subordinate to the rights of a buyer of the goods who is not*

*in the business of selling goods of that kind to the extent
that he or she gives value and receives delivery of the
goods after issuance of the certificate and without knowl-
edge of the security interest.* [Emphasis added.]

The trial court in the instant case concluded that
subsection 9103(1)(d)(i) applied to the present cir-
cumstances and found that plaintiff had failed to take
action to perfect its security interest within the requi-
site four-month period after the vehicle was brought
into Michigan;[4] therefore, its interest became sub-
ordinate to the interests of defendants. We affirm the
ruling of the trial court; however, we conclude that
summary disposition is warranted in favor of defen-
dants on the basis of subsection 9103(2)(d), rather
than subsection 9103(1)(d)(i). This Court will not
reverse a trial court's order if it reached the right
result for the wrong reason. *Detroit v Presti*, 240
Mich App 208, 214; 610 NW2d 261 (2000).

Subsection 2 of § 9103 is the appropriate focal
point of our analysis in this case, because it "applies
to goods covered by a certificate of title issued under
a statute of this state or of another jurisdiction under
the law of which indication of a security interest on
the certificate is required as a condition of perfec-
tion." Subsection 9103(2)(a). Although Ontario is a
noncertificate jurisdiction, see n 1, *supra*, a certifi-
cate of title for the vehicle was issued by the state of
Michigan to defendants.

Examining the provisions of subsection 2 of § 9103
in further detail, it is clear that paragraphs c and d

---

[4] It is undisputed that the vehicle was brought into Michigan in Septem-
ber 1999 and that plaintiff did not take any action until February 15, 2000,
when it filed the present suit.

address the issue of conflicting security interests in the present context, where the vehicle in question, subject to a valid security interest in a noncertificate jurisdiction, has been removed from that jurisdiction to a certificate state and thereafter a clean certificate of title has been issued. The scope of paragraphs c and d of subsection 9103(2) is explained in the Uniform Commercial Code Official Comment that accompanies § 9103:

> 4. (a) Where the collateral is an automobile or other goods covered by a certificate of title issued by any state and the security interest is perfected by notation on the certificate of title, perfection is controlled by the certificate of title rather than by the law of the state wherein the security interest attached (subsection (2)).
>
> (b) It has long been hoped that "exclusive certificate of title laws" would provide a sure means of controlling property interests in goods like automobiles, which because of their nature cannot readily be controlled by local or state-wide filing alone. In theory the certificate of title should control the property interests in the vehicle wherever the vehicle may be. However, . . . circumstances operate to prevent the perfect operation of the certificate of title device:
>
> First, some states have never adopted certificate of title laws. This results in a problem with the issuance of a certificate of title when the vehicle moves from a non-certificate to a certificate state, because the certificate-issuing officer is in no position to conduct a complete search to ascertain the condition of the title in a state of origin which required no filing or in which filing could be in any one or more of several localities. . . .
>
> *        *        *
>
> Given these practical problems, the choice of applicable rules of law after interstate removals of vehicles subject to certificate of title laws is most difficult. This Article [9] provides the rules set forth below.

\*　　\*　　\*

(d) If a vehicle not described in the preceding paragraph (i.e., not covered by a certificate of title) is removed to a certificate state and a certificate is issued therefore, the holder of a security interest has the same 4-month protection [for cases of interstate removal as is set forth in paragraph (1)(d) of § 9103], subject to the provision discussed in the next paragraph of Comment.

(e) Where "this state" issues a certificate of title on collateral that has come from another state subject to a security interest perfected in any manner, problems will arise if this state, from whatever cause, fails to show on its certificate the security interest perfected in the other jurisdiction. This state will have every reason, nevertheless, to make its certificate of title reliable to the type of person who most needs to rely on it. Paragraph (2)(d) of the section therefore provides that the security interest perfected in the other jurisdiction is subordinate to the rights of a limited class of persons buying the goods while there is a clean certificate of title issued by this state, without knowledge of the security interest perfected in the other jurisdiction. The limited class are buyers who are non-professionals, i.e., not dealers and not secured parties, because these are ordinarily professionals. The protective rule mentioned does not apply if this state adopts a device used under some certificate of title laws, namely, stating on the certificate of title that the vehicle may be subject to security interests not shown on the certificate, where the collateral came from a non-certificate state.

\*　　\*　　\*

One difficulty is that no state's certificate of title law makes any provision by which a foreign security interest may be reperfected in that state, without the cooperation of the owner or other person holding the certificate in temporarily surrendering the certificate. But that cooperation is not likely to be forthcoming from an owner who wrongfully procured the issuance of a new certificate not showing the out-of-state security interest, or from a local secured party finding himself in a priority contest with the out-of-state

> secured party. The only solution for the out-of-state secured party under present certificate of title laws seems to be to reperfect by possession, i.e., by repossessing the goods.

As the comment suggests, in the majority of cases involving the movement of goods from noncertificate to certificate jurisdictions, "§ 9-103(2)(c) applies the rules of § 9-103(1)(d) and thereby suspends for up to four months the effect of the clean certificate on the secured party's perfection." 4 White & Summers, Uniform Commercial Code (4th ed, practitioner treatise series), § 31-22(a), p 234, n 18. However, we conclude that the present case falls within the narrow exception described in subsection 9103(2)(d), which is designed to protect an innocent purchaser of goods moved from noncertificate to certificate jurisdictions. As explained in White & Summers, *supra* at § 31-22(b), pp 234-235:

> Many fraudulent debtors and others have cleansed goods of all liens simply by taking them across state lines and procuring clean certificates of title. The predecessor to 9-103(2) offered no guidance on how to resolve the ensuing conflict between the out-of-state perfected creditor and an innocent purchaser who relied on the clean certificate. Under the 1962 Code, courts tortured 9-103 to achieve what seemed sensible results.
>
> The drafters of the 1972 Official Text resolved the problem by supplementing the choice-of-law rules of 9-103(2) with the priority rule of 9-103(2)(d) to protect the most vulnerable class of purchasers, non-professional buyers. These buyers otherwise would have little or no protection at all because of the custom in many states not to check elsewhere for outstanding liens before issuing a new certificate. Section 9-103(2)(d) permits a nonprofessional buyer to take free of any security interest not noted on a title certificate, provided five conditions are met:

(1) The goods must be brought into "this state" while a security interest therein is perfected in any manner under the law of the jurisdiction from which the goods are removed;

(2) a certificate of title must be issued by "this state" after entry;

(3) such certificate must not show

(a) that the goods are subject to the security interest or

(b) that they may be subject to a security interest not shown on the certificate;

(4) the buyer must not be in the business of selling goods of that kind; and

(5) the buyer must give value and receive delivery

(a) after issuance of the certificate and

(b) without knowledge of the security interest.

The undisputed evidence in the instant case supports a conclusion that these five conditions have been met. The vehicle in question was brought into Michigan from Ontario, Canada, while subject to a security interest that was valid and perfected under Ontario law but that was not required, because of that province's status as a noncertificate jurisdiction, to be noted on the documents of ownership. Defendants, nonprofessional buyers, having been led by Mr. Boston to believe that the vehicle was unencumbered by any liens, signed a bill of sale and applied for and obtained a clean certificate of title from the Michigan Secretary of State using the Canadian registration papers (showing no encumbrances) provided to them by Boston. The Michigan certificate of title reflected only the lien of Central Savings Bank, which was financing defendants' purchase, not plaintiff's security interest. The certificate did not state on its face either that the vehicle was subject to plaintiff's lien or that it might be subject to a security interest not shown on

the certificate. Defendants obtained the Michigan certificate of title before paying any money to the seller, because this was required by Central Savings Bank to protect the interests of not only the bank but the defendants as well.

Therefore, the foreign security interest of plaintiff is subordinate to the interests of defendants, who pursuant to the standards of subsection 9103(2)(d) are innocent purchasers of the encumbered goods entitled to priority under these particular circumstances. The trial court, albeit for the wrong reasons,[5] therefore did not err in denying plaintiff's motion for summary disposition and granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(10).

Affirmed.

---

[5] Assuming arguendo that subsection 9103(2)(d) does not apply, the trial court correctly held that plaintiff's security interest in any event became unperfected pursuant to subsection 9103(1)(d)(i), as referenced by subsection 9103(2)(c), because of plaintiff's failure to reperfect before expiration of the requisite four-month period.