*In re* MOUKALLED ESTATE
(BAKIAN v FIFTH THIRD BANK)

Docket No. 257732. Submitted December 7, 2005, at Detroit. Decided
February 16, 2006, at 9:00 a.m.

The Oakland County Probate Court, Barry M. Grant, J., ordered the commencement of formal probate proceedings concerning the estate of Jihad H. Moukalled, deceased. Approximately 20 creditors, including Bruce Bakian and the predecessor of Fifth Third Bank, filed claims against the estate. The total amount claimed exceeded the estate's assets. Bakian's claim arose from loans to the decedent that Bakian alleged were secured by a security agreement he executed with the decedent and filed with the register of deeds. Included within the agreement's coverage were two vacant lots the decedent had purchased on land contract. The court authorized the personal representative to pay the land contract's balance. Bakian subsequently moved for enforcement of the security agreement, but Fifth Third Bank argued that Bakian did not have a security interest in the lots. The court initially entered an order denying Bakian's motion, concluding that the agreement did not satisfy the statutory requirements for a valid security agreement under article 9 of the Uniform Commercial Code (UCC), MCL 440.9101 *et seq.*, and did not create an equitable lien. On reconsideration, however, the court granted Bakian's motion, concluding that it had erred by not liberally construing the UCC as required by MCL 440.1102. Fifth Third Bank appealed.

The Court of Appeals *held*:

1. The probate court did not err by granting Bakian's motion for reconsideration. MCL 2.119(F)(3) allows a court considerable discretion in granting reconsideration to correct mistakes, to preserve judicial economy, and to minimize costs to the parties.

2. The probate court erred by finding article 9 of the UCC applicable. Former MCL 440.9104(j), the provision applicable to this case, provided plainly and unambiguously that article 9 does not apply to the creation or transfer of an interest in land. Article 9 thus does not apply to the alleged security agreement concerning the vacant lots.

3. The probate court did not err, however, when it granted Bakian's motion to enforce the agreement. Bakian properly asserted an equitable lien on the property. An equitable lien generally arises from an agreement that both identifies property and shows an intention that the property be security for an obligation. An equitable lien cannot be imposed if the proponent has an adequate remedy at law, and equity will generally create a lien only if the party entitled to it has been prevented by fraud, accident, or mistake from securing that to which the party was equitably entitled. In this case, Bakian and the decedent titled their agreement a security agreement, an expression of their intentions that the vacant lots would serve as security for the promissory notes. Absent a contrary intention appearing in the agreement, parties to a contract using terms with definite legal meanings are presumed to have intended that those terms have their proper legal meanings. The agreement also provided that the decedent could not sell the property without Bakian's consent. Moreover, Bakian filed the document with the register of deeds, which accepted it as a financing statement. The agreement reflects a clear intent to use identifiable properties as security. But for the parties' mutual mistake of law in preparing an agreement not enforceable under the UCC, Bakian would have been a secured creditor. There has been no showing that Bakian has an adequate remedy at law. The probate court reached the right result, albeit for the wrong reason.

Affirmed.

LIENS — EQUITABLE LIENS.

An equitable lien arises from an agreement that both identifies property and shows an intention that the property be security for an obligation; absent a written agreement, an equitable lien will be established only if, through the relations of the parties, there is a clear intent to use identifiable property as security for a debt; an equitable lien cannot be imposed if the proponent of the lien has an adequate remedy at law, and equity will create a lien only if the party entitled to it has been prevented by fraud, accident, or mistake from securing that to which the party was equitably entitled.

*Laurie S. Longo* for Bruce Bakian.

*O'Reilly Rancilio P.C.* (by *Matthew K. Casey* and *Robert Charles Davis*) for Fifth Third Bank.

Before: WHITE, P.J., and JANSEN and WILDER, JJ.

PER CURIAM. Respondent Fifth Third Bank appeals as of right the order granting petitioner's motion for reconsideration of the probate court's April 14, 2004, order denying petitioner's motion for enforcement of a security agreement. We affirm.

I

On August 10, 1999, petitioner Bruce Bakian and Jihad H. Moukalled (decedent) executed a promissory note pursuant to which petitioner agreed to loan decedent $150,000. The full amount came due on April 25, 2000. From August 1999 until early March 2000, decedent made timely monthly payments. On March 16, 2000, petitioner and decedent executed a second promissory note by which petitioner agreed to loan decedent an additional $231,000. The second promissory note came due on April 30, 2000. Both notes were executed by decedent in both his personal capacity and his capacity as president of Great Lakes Color Printers, Inc., decedent's business. When the notes came due, decedent failed to make payment. On April 28, 2000, petitioner and decedent, without the assistance of an attorney, executed a document entitled "Security Agreement," which provides in relevant part:

> This document is a binding agreement that Borrower Jihad H. Moukalled and Great Lakes Color Printers, Inc. collectively can not [sic] and will not seek protection under corporate or personal bankruptcy for the following Promissorry [sic] Notes (see attached notes). If any sums due under these Promissory Notes are not paid upon demand,and remain unpaid for more than five (5) days from the date due or demanded Great Lakes Color Printers Inc. and Jihad H. Moukalled agrees tothe [sic] following. Liquidation of the following personal and Corporate assets will be initiated to full fill [sic] the $381,000 debt owed to Bruce A. Bakian and Gerald Niester.

CORPORATE: All accounts receivable; Office and Plant Equipment; Any and all corporate funds and investments; Buildings and Property; Inventories.

PERSONAL: Cash (savings checking); Stocks; Cash value of Life Insurance; IRA and 401K; Residence and Furnishings at 25171 Rutledge Crossing, Farmington Hills Mi. 48335; Two Vacant lots (Heather Hills); Autos; Boats; Jewelry(Husband/Wife); Art work; Personal Effects; and not excluding any assets or titles, and funds in Mr. Moukalled Wifes [sic] maiden or married name.

This agreement prevents the sale and liquidation of all corporate and personal holdings with out [sic] the written consent of Bruce Bakian and Gerald Niester. [Brackets in original replaced with parentheses.]

In addition to the promissory notes, the parties attached the legal description of two lots situated in Heather Hills.

On November 10, 2000, decedent took his own life and the lives of his wife and three children. Petitioner, respondent's predecessor,[1] and approximately 18 additional creditors filed claims in excess of $2 million against decedent's estate, which had $312,023.36 in total assets.[2] On November 27, 2000, petitioner filed the document entitled "Security Agreement" with the register of deeds, which accepted the document as an actual financing statement.

Petitioner also filed a lis pendens and a claim of lien against the two vacant lots in Heather Hills. Decedent had purchased the two lots in December 1997 pursuant

---

[1] Throughout this opinion, the term "respondent" will be used to refer to both respondent Fifth Third Bank and its predecessor, Old Kent Bank.

[2] Petitioner and respondent claimed $271,000 and $780,400.65 respectively against the estate. Respondent also executed a security agreement with decedent, who executed the document in his official capacity as the president of his business. Respondent's agreement granted a security interest in "[a]ll equipment and machinery . . . ."

to a land contract, owing approximately $60,000 on the contract at the time of his death. The probate court authorized the personal representative of the estate to pay the outstanding balance on the land contract. The probate court reserved for a later date its determination concerning the validity of petitioner's purported security interest. After a January 7, 2003, hearing,[3] the probate court orally concluded that the description in the agreement was adequate to create a security interest, given that the parties did not dispute decedent's ownership of the two vacant lots in Heather Hills. However, the probate court allowed respondent the opportunity to submit further written argument. By order dated April 14, 2004, the probate court reversed its position and entered an order denying petitioner's motion for enforcement of the security agreement/lien, rejecting petitioner's several alternative theories supporting his contention that the agreement granted him priority over other creditors., i.e., that the agreement satisfied the statutory requirements for a valid and enforceable security agreement under article 9 of the Uniform Commercial Code (UCC), specifically former MCL 440.9104(j), or that he was entitled to the lots pursuant to a land contract mortgage, a contract interest under the common law, or an equitable lien.

Petitioner moved for reconsideration, and the probate court, concluding that a palpable error had occurred when it failed, as required by MCL 440.1102(1)

[3] At a previous hearing held on September 17, 2002, the probate court determined that the "Security Agreement" was a valid and enforceable agreement. As a consequence, the only issue purportedly before the court at the January 7, 2003, hearing was whether the description of the vacant lots in the security agreement was sufficient to create a secured interest in the lots. Through no fault of counsel, the recordings of several hearings were destroyed, and therefore, the September 17, 2002, hearing transcript was not provided to this Court.

to "liberally" apply the purpose and intent of the parties, entered an order granting reconsideration and petitioner's motion for enforcement of the security agreement/lien. In granting the motion for reconsideration, the probate court reasoned that even if the parties' agreement was not technically sound as required by the UCC, "the UCC is still to be liberally construed and applied to promote its purpose and principle." Respondent now appeals.

II

This Court reviews for an abuse of discretion a trial court's decision on a motion for reconsideration. *Churchman v Rickerson,* 240 Mich App 223, 233; 611 NW2d 333 (2000). Issues of law, including whether a valid and enforceable security agreement exists under article 9 of the UCC, are reviewed de novo. *Roan v Murray,* 219 Mich App 562, 565; 556 NW2d 893 (1996). Questions of statutory interpretation are questions of law and are also reviewed de novo. *Stone v Michigan,* 467 Mich 288, 291; 651 NW2d 64 (2002).

III

Respondent first argues that the probate court improperly granted petitioner's motion for reconsideration. Respondent contends that the motion was procedurally defective because it simply raised the same issues originally presented to the probate court. We disagree.

Rules concerning the interpretation of statutes apply with equal force to the interpretation of court rules. When the plain and ordinary meaning of a word is clear, judicial construction is neither permitted nor necessary. *Hinkle v Wayne Co Clerk,* 467 Mich 337, 340; 654 NW2d 315 (2002).

MCR 2.119(F)(3) provides:

> *Generally, and without restricting the discretion of the court,* a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error. [Emphasis added.]

The plain language of the court rule does not categorically prohibit a trial court from granting a motion for reconsideration even if the motion presents the same issues initially argued and decided. Rather, MCR 2.119(F)(3) "allows the court considerable discretion in granting reconsideration to correct mistakes, to preserve judicial economy, and to minimize costs to the parties." *Kokx v Bylenga,* 241 Mich App 655, 659; 617 NW2d 368 (2000). Accordingly, if the probate court in this case wanted " 'to give a "second chance" to a motion it . . . previously denied, it has every right to do so, and . . . [MCR 2.119(F)(3)] does nothing to prevent this exercise of discretion.' " *Id.* (citations omitted). Respondent's argument in this regard is without merit. The probate court did not abuse its discretion in reconsidering its earlier ruling.

We next address respondent's primary argument on appeal, that article 9 of the UCC, does not apply to security agreements in real estate and, therefore, the probate court abused its discretion in determining that article 9 applied to petitioner and decedent's agreement.

Article 9, MCL 440.9101 *et seq.,* was substantially amended by 2000 PA 348, effective July 1, 2001. This case was commenced before the amendment and, therefore, it is controlled by the former provisions of article

9. *Ford Credit Canada Leasing, Ltd v DePaul,* 247 Mich App 723, 727 n 3; 637 NW2d 831 (2001).

The fundamental aim of statutory construction is to give effect to the intent of the Legislature. *Erb Lumber, Inc v Gidley,* 234 Mich App 387, 392; 594 NW2d 81 (1999). This Court must look at the specific statutory language, and, if it is " 'clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written.' " *Id.,* quoting *USAA Ins Co v Houston Gen Ins Co,* 220 Mich App 386, 389; 559 NW2d 98 (1996). When construing a statute, every word should be presumed to have meaning, and this Court should avoid a construction that renders a statute, or any part of it, surplusage or nugatory. *Dale v Beta-C, Inc,* 227 Mich App 57, 65; 574 NW2d 697 (1997).

Except as otherwise formerly provided in MCL 440.9104, former MCL 440.9102(1)(a) provided in relevant part that article 9 applies "[t]o any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts . . . ."

The provision in dispute in the instant case, former MCL 440.9104(j), provided in relevant part:

> This article does not apply:
>
> * * *
>
> (j) Except to the extent that provision is made for fixtures in section 9313, *to the creation or transfer of an interest in or lien on real estate,* including a lease or rents thereunder . . . .

The term "real estate" is not defined in article 9 or included in the general definitions applicable to the UCC under MCL 440.1201. When statutory terms are

not otherwise defined by the statute, they must be given their plain and ordinary meanings. Resort to dictionary definitions as an interpretive aid is appropriate. *Cox v Flint Bd of Hosp Managers,* 467 Mich 1, 18; 651 NW2d 356 (2002).

"Real estate" means "[l]and and anything permanently affixed to the land . . . ." Black's Law Dictionary (5th ed). *Random House Webster's College Dictionary* (1997) defines "real estate" as "property, [especially] in land." We therefore conclude that the plain, unambiguous language of MCL 440.9104(j) provided that article 9 does not apply to the creation or transfer of an interest in land.

Our interpretation of MCL 440.9104(j) is further supported by the plain, unambiguous language of former MCL 440.9102(1), which stated that article 9 applies to any transaction intended to create a security interest "in personal property or fixtures . . . ." MCL 440.9102(1) did not reference transactions intended to create a security interest in real estate or land. Decedent's interest in the vacant lots was not an interest in personal property as a matter of law. Rather, it was an interest in realty. Decedent purchased the lots on land contract and became a land contract vendee, a fact undisputed by the parties. A land contract vendee purchases property upon the signing of the land contract and thereafter acquires an equitable interest in that property. *Graves v American Acceptance Mortgage Corp (On Rehearing),* 469 Mich 608, 616; 677 NW2d 829 (2004). At the point of the signing of the land contract, "the vendee acquires 'seisin' and a present interest in the property that may be sold, devised, or encumbered." *Id.*[4] As the Court explained:

---

[4] "Seisin" is defined as "[p]ossession of real property under claim of freehold estate." Black's Law Dictionary (5th ed).

That the vendee may ultimately default on the contract does not negate the fact that the vendee has, in a real sense, purchased the relevant property. That legal title remains in the vendor until full performance of all contractual obligations likewise does not negate the fact that the vendee has already purchased the property. The vendor's legal title . . . "is only a trust coupled with an interest by way of security for a debt . . . ." It represents "but an ordinary money debt, secured by the contract." [*Id.* at 616-617 (citations omitted).]

On the basis of the foregoing authorities and the plain language of MCL 440.9104(j), we conclude that article 9 of the UCC is inapplicable to the alleged security agreement concurring the realty referred to as "Heather Hills."

Given that MCL 440.9104(j) unambiguously did not apply to interests in real property, we find no merit in petitioner's additional contention that the language of former MCL 440.9104 is ambiguous. Petitioner contends that article 9, as previously written, never intended to exclude land contract interests from its coverage; otherwise the Legislature would not have included language specifically excluding land contracts in the revised version of article 9.[5] Quoting *People v Wright,* 432 Mich 84, 92; 437 NW2d 603 (1989), petitioner argues that it is "axiomatic that when the Legislature effects a change in the provisions of a statute, a presumption arises that the Legislature in-

---

[5] MCL 440.9109, as amended by 2000 PA 348, effective July 1, 2001, provides:

(4) This article does not apply to any of the following:

\* \* \*

(*l*) The creation of or transfer of an interest in or lien on a land contract mortgage governed by sections 6 through 11 of 1879 PA 237, MCL 565.356 to 565.361.

tends a substantive change in the law." We disagree with petitioner's application of the rule to the facts of this case.

In *Detroit Edison Co v Janosz,* 350 Mich 606, 613-614; 87 NW2d 126 (1957), a case relied on by the *Wright* Court in setting out the rule of law that an amendment to a statute is presumed to substantively change the statute, the Court in rejecting a similar argument explained:

> *That is a rule for construction of the amendment* when . . . the meaning of the statute before amendment is settled and the question presented is the meaning and effect to be given the amendment. *The rule is not applied in reverse for the purpose of determining the meaning of the statute before amendment by presuming that it must have been something different than that which is the clear intent of the statute after the amendment.* . . . While in many and perhaps most instances it undoubtedly is the legislative intent, in enacting an amendment, to change existing law, there are, as undoubtedly, other instances, particular if uncertainty exists as to the meaning of a statute, when amendments are adopted for the purpose of making plain what the legislative intent had been all along from the time of the statute's original enactment. [Emphasis added.]

In this case, judicial construction of the relevant portions of the prerevision language of article 9 is neither required nor allowed because the statutory language of the relevant statutes is plain and unambiguous. A review of the language formerly used in MCL 440.9102 and MCL 440.9104 reveals no evident ambiguity in the statutory language, and this Court will not speculate about the Legislature's intent beyond the intent plainly expressed.[6] See *Omne Financial, Inc v Shacks, Inc,* 460

---

[6] We emphasize that our holding is limited to the specific application of former MCL 440.9104(j). We express no opinion concerning the 2000 amendments to article 9.

Mich 305, 311-312; 596 NW2d 591 (1999) (courts may not speculate regarding legislative intent beyond the plain words used in the statute).

Although the probate court erred in finding the UCC applicable, we nevertheless affirm on the ground that petitioner properly asserted an equitable lien on the property.

In an equitable action, a trial court looks at the entire matter and grants or denies relief as dictated by good conscience. *Michigan National Bank & Trust Co v Morren,* 194 Mich App 407, 410; 487 NW2d 784 (1992), citing *Hunter v Slater,* 331 Mich 1, 7; 49 NW2d 33 (1951). Generally, an equitable lien arises from an agreement that both identifies property and shows an intention that the property will be security for an obligation. *Warren Tool Co v Stephenson,* 11 Mich App 274, 281; 161 NW2d 133 (1968). "In the absence of a written contract, an equitable lien will be established only where, through the relations of the parties, there is a clear intent to use an identifiable piece of property as security for a debt." *Senters v Ottawa Savings Bank, FSB,* 443 Mich 45, 53; 503 NW2d 639 (1993). An equitable lien cannot be imposed, however, if the proponent has an adequate remedy at law. *Yedinak v Yedinak,* 383 Mich 409, 415; 175 NW2d 706 (1970); *Ashbaugh v Sinclair,* 300 Mich 673, 677; 2 NW2d 810 (1942).

In *Warren Tool,* this Court imposed an equitable lien where the defendant company filed for bankruptcy without paying the plaintiffs pursuant to a security arrangement, memorialized in letters, in which the defendant agreed to present certain accounts receivable checks to a specified bank that would pay the plaintiffs' invoice directly. *Warren Tool, supra* at 277-279. When the plaintiffs filed suit, the trial court dismissed the

action, concluding that the security arrangement was totally illusory. The plaintiffs appealed, arguing that the evidence was sufficient to establish an equitable lien. *Id.* at 280. This Court explained the concept of equitable liens:

> "The doctrine [of equitable lien] may be stated in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or encumbrancers with notice. Under like circumstances, a merely verbal agreement may create a similar lien upon personal property." 4 Pomeroy's Equity Jurisprudence, § 1235, p 696.

> \* \* \*

> "The form or particular nature of the agreement which shall create a lien is not very material, for equity looks at the final *intent* and purpose rather than at the form; and if intent appear to give, or to charge, or to pledge property, real or personal, as a security for an obligation, and the property is so described that the principal things intended to be given or charged can be *sufficiently identified*, the lien follows." 4 Pomeroy's Equity Jurisdiction, § 1237 (5th ed), p 702. (Emphasis supplied). [*Id.* at 281, 293.]

Respondent argues that petitioner's equitable lien claim must fail because the agreement does not reveal that decedent intended to create a security interest or mortgage in the property, but only reflects the parties' intent to prohibit decedent from filing for bankruptcy. We disagree. The parties titled their agreement "Secu-

rity Agreement," an expression of their intentions that the Heather Hills lots would serve as security for the promissory notes. " ' "As a general rule, where terms having a definite legal meaning are used in a written contract, the parties to the contract are presumed to have intended such terms to have their proper legal meaning, absent a contrary intention appearing in the instrument." ' " *Meyer & Anna Prentis Family Foundation, Inc v Barbara Ann Karmanos Cancer Institute,* 266 Mich App 39, 58; 698 NW2d 900 (2005), quoting *Conagra, Inc v Farmers State Bank,* 237 Mich App 109, 132; 602 NW2d 390 (1999), quoting, *Nationwide Mut Fire Ins Co v Detroit Edison Co,* 95 Mich App 62, 64; 289 NW2d 879 (1980). Further and significantly, the agreement provided that decedent's personal holdings and those of his business could not be sold or liquidated without petitioner's written consent. Petitioner also filed the document entitled "Security Agreement" with the register of deeds, which accepted the document as an actual financing statement. The agreement reflects a clear intent by the parties to use identifiable pieces of property, the Heather Hills lots, as security for the promissory notes. *Senters, supra* at 53.

Our conclusion is consistent with the general principle that " '[e]quity will create a lien only in those cases where the party entitled thereto has been prevented by fraud, accident or mistake from securing that to which he was equitably entitled.' " *Id.* at 54, quoting *Cheff v Haan,* 269 Mich 593, 598; 257 NW 894 (1934). In this case, but for the parties' mutual mistake of law in preparing an agreement not enforceable under the UCC, petitioner would have been a secured creditor. Given that petitioner is the only party who attempted to secure his loans to decedent against decedent's personal assets and that no showing has been made that petitioner has an adequate remedy at law, we conclude that

petitioner has sufficiently demonstrated that he is entitled to an equitable lien on the specific facts of this case.

In sum, although the probate court improperly concluded that the security agreement was enforceable under the UCC, a trial court's ruling that reaches the right result, although for the wrong reason, may be upheld on appeal. *Grand Trunk W R, Inc v Auto Warehousing Co*, 262 Mich App 345, 354; 686 NW2d 756 (2004).[7]

Affirmed.

---

[7] In light of our conclusion, we need not address petitioner's alternative theories concerning common-law contract and land-contract mortgage.