# IN THE COURT OF APPEALS OF IOWA

No. 23-1421
Filed September 18, 2024

**IN RE THE MARRIAGE OF ARON ELVIS MENTZ
AND KELSEY ANNE MENTZ**

**Upon the Petition of
ARON ELVIS MENTZ,**
       Petitioner-Appellant,

**And Concerning
KELSEY ANNE MENTZ n/k/a KELSEY ANNE HOFFMAN,**
       Respondent-Appellee.

_____

Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Ackley, Judge.

A husband appeals the district court's discovery sanction and decree dissolving his marriage. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**

Jamie A. Splinter of Splinter Law Office, Dubuque, for appellant.

Robert J. Murphy of Law Offices of Robert J. Murphy, Dubuque, for appellee.

Considered by Badding, P.J., Langholz, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**BADDING, Presiding Judge.**

Aron and Kelsey Mentz were married in 2016 and have one minor child together—V.M., born in 2018. Aron petitioned to dissolve the marriage in November 2021. As the case progressed, Aron failed to respond to Kelsey's discovery requests or the district court's orders requiring him to do so. So, at the start of the dissolution trial, the court prohibited Aron from objecting to or presenting evidence against Kelsey's requested relief. The court then placed the child in Kelsey's physical care—before hearing any evidence from either party—ruling: "These are sanctions that I am imposing for the noncompliance since this matter started in 2021."

On appeal from the dissolution decree that followed, Aron claims the district court did not base its physical-care decision on the best interests of the child. We agree and reverse that part of the court's decree. Aron's remaining claims, including his challenge to the property division, are denied. The case is remanded for further proceedings on physical care before a different judge.

I.    **Background Facts and Proceedings**

After five years of marriage and one child together, Aron petitioned to dissolve his marriage from Kelsey. He asked for sole legal custody and physical care of the parties' child, then three-year-old V.M. In her answer, Kelsey requested joint legal custody and joint physical care of V.M. Both parties sought an equitable division of their assets and debts.

At Aron's request, a temporary hearing to determine physical care, visitation, child support, possession of the marital home, and monthly debt payments was set for February 2022. The parties were living separately then—

Aron stayed in the marital home, while Kelsey moved in with her parents. Before the hearing, the parties attended mediation on temporary matters and, according to the mediator's certificate, "entered into an agreement to resolve all temporary issues of conflict." While the certificate said a stipulation would be filed, that never happened. Instead, according to Aron, for the next nineteen months, they followed the schedule adopted at mediation: alternating weekends, with V.M. in Aron's care every Monday, Wednesday, and Thursday, and in Kelsey's care every Tuesday and during the day while Aron worked.

In March, even though no notice of serving initial disclosures was filed by either party, Kelsey served discovery requests on Aron. *Cf.* Iowa R. Civ. P. 1.505(1)(a) ("In domestic relations proceedings, unless it has been stipulated or ordered that initial disclosures under rule 1.500(1)(d) need not be made, a party may not seek discovery from any source before the initial disclosures under rule 1.500(1)(d) have occurred."). When those requests went unanswered, Kelsey filed a motion to compel. Aron didn't resist the motion, so the court granted it and required Aron to respond to the discovery requests within fourteen days. The court's order warned: "Failure to comply may result in sanctions. Sanctions may include a financial penalty, including attorney's fees or the inability to present evidence or testimony to contradict matters that are subject of the discovery." But the clerk was not directed by the order, or the orders that followed, to serve a copy "to counsel and to the party or parties whose conduct, individually or by counsel, necessitated the motion." Iowa R. Civ. P. 1.517(1)(e).

More than one month later, with trial fast approaching, Kelsey moved to sanction Aron because he hadn't complied with the court's order. The motion

noted: "There have been no requests by [Aron's] counsel for an extension and, in fact, there has been no contact by [Aron's] counsel whatsoever." With no resistance again, the court sanctioned Aron by requiring him to pay $962.50 in attorney fees and precluding him "from presenting evidence, witnesses, or testimony to contradict matters that are subject of the discovery."

A few days before the trial in October, Kelsey's attorney filed a motion to continue because neither party had completed the children in the middle course or attended another round of mediation as ordered by the court. Initial disclosures were still outstanding, as were Aron's discovery responses. The motion again noted: "Counsel for [Kelsey] has tried to contact the Counsel for [Aron] by phone and has left a text message with regard to this motion, but has not been contacted." In her first filing since the beginning of 2022, Aron's attorney joined in the continuance request, agreeing "that this case is not ready for trial."

The dissolution trial was continued to July 2023. In May, Kelsey served more discovery requests on Aron that again went unanswered. She filed another motion to compel, which Aron did not resist. Like before, the court granted the motion and ordered Aron to respond to the discovery by July 12—fifteen days before trial was set to start. Once more, Aron failed to respond. So Kelsey moved for more sanctions: attorney fees, "a prohibition on presenting any evidence that would have been adduced to response to the discovery[,] and/or a default judgment." In a separately filed motion for default judgment, Kelsey argued that Aron's "actions are of such high degree of disdain for the Court that [he should] be found in default."

No ruling was entered on Kelsey's unresisted motions. So two days before trial, she filed her exhibit list and exhibits, along with an affidavit of financial status. And on the morning of the trial, Kelsey filed the unanswered discovery requests with the court. Aron didn't file anything.

At the start of the trial, the district court asked the parties to address the discovery issues. Kelsey's attorney argued Aron had flagrantly disregarded the court's orders on discovery and done nothing "in approximately two years to meet those legal requirements." He also noted that "mediation has not been completed, and communication with opposing attorney has been pretty much impossible." In response, Aron's attorney told the court:

> [R]egarding the motion for default, there has been a—I will take responsibility for the lack of passing down discovery requests. I moved offices in the last year, and it has created some problems, but that's not an excuse, things have been filed in the court also. . . . As far as the financials, we were always talking about a 50-50 split on things, so that's not an issue. . . .

Once the attorneys were finished, the court lectured Aron:

> So normally, the court rules do not permit the Court to proceed when mediation is not complete. When one party is noncompliant with that process, it creates an extreme inequitable situation where one wants to get divorced and the other is trying to thwart that process. The second thing that is problematic is when individuals don't comply with the court orders that are entered, because it shows complete and total disregard for the authority of this Court. . . .
> So, Mr. Mentz, you have not complied with anything that I have instructed you to do. . . .

Aron's attorney interjected, taking responsibility for the failure to complete mediation. But the court cut her off:

> I understand the circumstances . . . that you have presented, but he wanted the divorce. He filed this. When a court order is entered, and I presume that you do practice as any lawyer does, you

forward those orders on to your client. He knows he's supposed to do these things.

After asking Kelsey's attorney for more detail about the assets and debts listed in her financial affidavit, the court imposed its "prior order for sanctions . . . precluding [Aron] from providing any evidence that disagrees with what was just placed on the record by [Kelsey's attorney] relating to financial matters." The court then equally divided the assets and debts Kelsey's attorney had identified.

On physical care, Kelsey's attorney told the court that she wanted V.M. to be placed with her. The court granted her request, ruling that "joint legal custody will be awarded. She will get primary [care], and we'll go from there. These are the sanctions that I am imposing." When Aron's attorney pointed out that Kelsey's answer only asked for joint physical care, the court prompted Kelsey's attorney to amend the pleadings. He made an oral motion, which the court granted. The court then allowed Kelsey to testify about visitation.

Kelsey gave a brief overview of her communication difficulties with Aron and touched on safety concerns that she had for V.M. in his care. She also alluded to some mental health struggles in her past, testifying that since she and Aron separated, she was "off most of [her] medications" and did not have to be in therapy anymore. On cross-examination, Kelsey acknowledged that she had recently reported her safety concerns to the Iowa Department of Health and Human Services but "they found nothing."[1] She also acknowledged that she used marijuana sometimes, including within the last week, but never around V.M.

---

[1] Aron offered the unfounded report into evidence, but Kelsey objected because it was not disclosed as an exhibit before trial. The court admitted the exhibit subject to Kelsey's objection but stated, "I will not accept that as part of my consideration."

Kelsey testified that it helped with her "PTSD, depression, [and] anxiety," though she did not have a current medical marijuana card. When asked about her "drug history," Kelsey admitted, "I had a substance abuse problem prior to being with Aron, and then I had gotten clean" but relapsed twice.

At the close of Kelsey's testimony, Aron's attorney renewed her objection to Kelsey's request for physical care "when it was not pled." Counsel also "object[ed] to the award of primary care as a sanction, because that is not a determination that can be made that's in the best interest of the child." The court responded:

> It is not that I'm giving her primary care as a sanction. I am precluding him from arguing against those issues. As [Kelsey's attorney] indicated, the Court has the ability to default him for his failure. I know that is a severe consequence. However, it has been repeated actions, so that is why I am awarding her what she is asking for. The primary care is not a sanction. It's the lack of his ability to object.

After a break, the court returned to the bench and informed Aron, "I did clarify from the discovery requests that some of the information requested in the discovery pertained to visitation, so you only have a limited window as to what you want to present, so I'm allowing you that ability." On direct examination, Aron asked that V.M. be placed in his physical care "for her safety and everything else." Aron explained that he was better able to support V.M.'s relationship with both parents, testifying:

> I do not talk any ill or anything with regards to her mom. I try to talk to [V.M.] and make sure that she is a happy-go-lucky child. I take her to all of her appointments that she never misses. I made sure that she is, has fun on a regular basis, as well as the reading, the writing, the learning, all of that kind of different stuff . . . and basically, always trying to build that relationship up in regards with her mom as well.

Aron tried to get into some of his communication difficulties with Kelsey, noting that she had stopped using a notebook they had been passing back and forth about V.M., and he was "just totally confused on trying to be able to find outlets of communication with her." But when he started to go into more detail about those difficulties, including a time when Kelsey "whip[ped] a backpack at [his] face," Kelsey's attorney objected, "We're getting pretty far afield, Your Honor." Aron's attorney then moved on to visitation details.

At the end of his testimony, Aron apologized to the court, explaining:

> I've been trying to get in touch with [my attorney] for the last, since actually the beginning of the year, to get this finalized and figured out. I am not exactly sure . . . what other, or what I can go through other than trying to find a different attorney to look at. I wasn't able to do so, so I have actually been in touch by e-mails, phone calls, texts, and I stopped at her office, and I had not actually talked to my attorney to this point.

The next day, the district court entered its dissolution decree, which detailed Aron's discovery failures before stating: "[Aron] was permitted to place on the record, his position with regard to the parties' minor daughter, as the Court finds that the issues of custody, primary care and visitation are paramount. The Court desired to make a decision that was in the best interest of the minor." The court outlined the physical-care factors in Iowa Code section 598.41(3) (2021) and found the "focus that [Kelsey] exhibits regarding her daughter and her daughter's needs places a slight tipping of the scales in favor of [Kelsey] being the primary care provider." But the court warned Kelsey that "[i]f her mental health deteriorates or her addictions overcome her, the Court would not hesitate to move the child into the primary care of [Aron]." The court ordered Aron to pay child support to Kelsey,

divided the marital estate consistent with its ruling on the record, and directed each party to be responsible for their own attorney fees.

Aron appeals,[2] claiming the district court (1) abused its discretion in granting Kelsey's motion to amend her pleadings; (2) improperly granted a default judgment and wrongly precluded Aron "from refuting anything [Kelsey] wanted"; (3) failed to base its physical care determination on the best interests of the child; and (4) did not make an equitable distribution of the marital estate. Both parties ask to be awarded their appellate attorney fees.

## II.     Analysis

### A.      Motion to Amend Pleadings

Aron's first claim implicates Iowa Rule of Civil Procedure 1.457:

> If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be served thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice that party in maintaining the action or defense upon the merits.

A decision to grant an amendment under this rule will be reversed "only where a clear abuse of discretion is shown." *Meincke v. Nw. Bank & Tr. Co.*, 756 N.W.2d 223, 229 (Iowa 2008) (citations omitted). Aron has not made that showing.

Aron argues that by allowing Kelsey to amend her pleading to request physical care, he was "certainly surprised and prejudiced" because her answer only sought joint physical care and, "for [nineteen] months from mediation on

---

[2] Aron secured new counsel to represent him on appeal after his trial attorney failed to file a proof brief and appendix designation or cure the default after notice from our supreme court. The court dismissed Aron's appeal for these failures but reinstated the appeal on motion by Aron's new counsel.

January 26, 2022, until the decree on July 28, 2023," V.M. was in his physical care. But as Aron recognizes, "[a]llowance of an amendment to a pleading is the rule and denial the exception." *Id.* (citations omitted). And Aron always knew that physical care was at issue since his petition asked for V.M. to be placed in his physical care, while Kelsey's answer sought joint physical care. Because the amendment did not substantially change the issue before the court, but simply Kelsey's position on that issue, we find no abuse of the court's discretion. *See id.* (noting an amendment that will substantially change the issue is not permissible).

### B. Default Judgment and Physical Care

Aron next contends the district court improperly granted Kelsey's motion for default judgment based on various procedural errors.[3] But it's not clear whether the court actually entered a default judgment against Aron.

Even though Kelsey moved for a default judgment, the court never granted her request in writing or on the record. Nor did the court characterize its pretrial rulings granting Kelsey's motions to compel and imposing sanctions as a default judgment. Instead, the court precluded Aron from objecting to or presenting evidence against Kelsey's requested relief. Iowa Rule of Civil Procedure 1.517(2) authorizes that type of sanction, separate from the sanction of a default judgment. *Compare* Iowa R. Civ. P. 1.517(2)(b)(2) (authorizing the court to sanction a party for failing to obey an order to provide discovery through an "order refusing to allow

---

[3] Those include Aron's claims that (1) he was not given the notice required by Iowa Rule of Civil Procedure 1.972(2); (2) Kelsey did not provide the initial disclosures required by rule 1.500(1)(d), so her later discovery requests were improper under rule 1.505(1)(a); and (3) the motions to compel did not contain a certification identifying the date and time "of any conference or attempts to confer" with opposing counsel as required by rule 1.517(5).

the disobedient party to support or oppose designated claims or defenses, or prohibiting such party from introducing designated matters in evidence"), *with* Iowa R. Civ. P. 1.517(2)(b)(3) (authorizing the court to render "a judgment by default against the disobedient party").

In any event, whether the district court entered a default judgment against Aron or not, the court "should not have proceeded to establish [physical] care without establishing a factual basis for the finding" and determining it was in V.M.'s best interests. *Fenton v. Webb*, 705 N.W.2d 323, 327 (Iowa Ct. App. 2005). The court does have the power to "make such orders in regard to the failure [to comply with discovery orders] as are just." *See* Iowa R. Civ. P. 1.517(2)(b). "But in an action for custody, the court's ultimate ruling must be governed by the child's best interests—not a sanction." *Carmichael v. Philpott*, No. 17-0124, 2018 WL 739275, at *3 (Iowa Ct. App. Feb. 7, 2018). Yet that is exactly how the court characterized its physical care decision at the start of trial: "These are the sanctions that I am imposing for the noncompliance since this matter commenced in 2021." And the court made that decision before hearing any evidence from either Kelsey or Aron.

Although the court then allowed some limited evidence and tried to tie up the loose ends in its dissolution decree, we find more was needed here. *Cf. id.* (finding no abuse of discretion where "the court crafted the sanction so as to be provided more information about the child's wishes and interests"). There were allegations at trial of child abuse, substance use, and mental health issues, all of which are serious matters impacting this child's best interests. And that is our "first and governing consideration." Iowa R. App. P. 6.904(3)(n); *see also In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007) ("The objective of a physical care

determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity.").

"A child does not lose his or her rights because a parent fails to comply with court rules." *Fenton*, 705 N.W.2d at 327. Even with the one-sided evidence, the court seemed to think this was a close case, finding "a slight tipping of the scales" for physical care with Kelsey in its written ruling. Under these circumstances, the court "should have entertain[ed] evidence relating to the best interest of the child" before determining physical care. *Id.*; *cf. Schmidt v. Eft*, No. 16-0238, 2016 WL 6637594, at *2–3 (Iowa Ct. App. Nov. 9, 2016) (finding no abuse of discretion when the court excluded every witness a father intended to call, except for himself and the child's mother, and allowed the father to introduce his exhibits with proper foundation). Because the court did not do so, we reverse its physical care decision and resulting child support order.

### C. Property Division

Aron finally claims the district court failed to equitably divide the parties' assets and debts. Yet he doesn't explain how the court's division was inequitable. And he agreed at trial to "a 50-50 split on things," which the court seemed to grant. Given Aron's concession and undeveloped argument on this issue, we affirm the court's property division. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) ("A broad, all-encompassing argument is insufficient to identify error in cases of de novo review.").

### D. Appellate Attorney Fees

Both parties ask that we award them appellate attorney fees. Such fees are not a matter of right, but rest in the court's discretion. *In re Marriage of Okland*, 699

N.W.2d 260, 270 (Iowa 2005). In considering whether an award of appellate attorney fees is appropriate, we look at "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (citation omitted). After considering those factors, we deny the parties' requests and order them to be responsible for their own attorney fees on appeal.

## III.  Conclusion

We affirm the dissolution of the parties' marriage, grant of joint legal custody, and division of property, but we reverse the district court's order placing the minor child in Kelsey's physical care. We remand for the prompt conduct of a new evidentiary hearing before a new judicial officer on the issues of physical care, visitation, and child support. The trial court, in its discretion, may order or permit any pretrial procedures including discovery. We express no opinion on the proper outcome and do not retain jurisdiction. Both parties' requests for appellate attorney fees are denied.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**